## J. A. MᴄWHIRTER ET AL., APPELLANTS, *v.* E. C. BRAIN-ARD ET AL., RESPONDENTS.

DECISION APPROVED—TITLE OF ACT, WHAT MUST EXPRESS.—The case of *Simpson* v. *Bailey* (3 Or. 515), approved, wherein it is held that the object of Art. 4, § 20 of the Constitution, which provides that every act shall embrace but one subject, etc., is to prevent matters, wholly foreign and disconnected from the subject expressed in the title, from being inserted in the body of the act; but that such section does not require that all subjects, properly connected with the main subject, shall be so expressèd.

EMERGENCY.—While the Legislature cannot create an emergency, it may declare that certain existing facts create one, so as to give an act effect from its passage and approval by the Governor.

COUNTY SEAT—ACT OF 1872, SUBMITTING THE LOCATION OF, TO A VOTE, CONSTITUTIONAL.—The Legislature of 1872 enacted a law providing that the question of the location of a county seat for Union County should be submitted to a vote of the people of the county, at the ensuing Presidential election; specifying five points to be voted for, and restricting the designation to the points so specified; that if neither of such points received a majority of the votes cast, the two highest should be voted for at the next general election, and providing that the point finally receiving such majority should be the county seat. *Held*, that the act does not delegate the power to locate, but exercises it; and that the submission to the voters, authorized in the act, merely provides a particular mode by which the location shall take effect.

CONTESTING ELECTION IN LOCATION OF COUNTY SEAT—CANNOT GO BEHIND CANVASS OF VOTES BY PROCEEDINGS IN EQUITY.—Upon the submission of the question of the location of a county seat to an election, the question of fact, as to whether the canvass of the vote was correct, and as to what the true vote was, and subordinate questions, cannot be tried in equity. The proper remedy to try the qualification of voters, the legality of the conduct of the judges, or of the canvass, is by mandamus and not by injunction.

APPEAL from Union County.

In accordance with provisions of an act of the Legislature of 1872, the question of the location of a county seat for Union County, Oregon, was submitted to the voters of said county, at the Presidential election of that year. The places to be voted for at such election were restricted by the act to La Grande, Union, Cove, Oro Dell, and Summerville. Neither of these points received a majority of all the votes cast; whereupon, as provided in the act, the question was submitted at the regular election of 1874, upon the two points having the greatest number of votes in the No-

vember election. These points were La Grande and Union. Upon a canvass of the vote of 1874, Union was declared to have received a majority of all the votes cast, and proclamation was duly made to that effect. Thereafter, an injunction was prayed for by appellants to restrain respondents, who are county officers of Union County, from removing their offices from La Grande to Union. Upon the final hearing the injunction was denied, and judgment rendered for respondents. Thereupon the appellants brought this appeal.

*M. Baker and W. W. Thayer*, for Appellants.

The canvass of the judges and proclamation of the Governor were not conclusive as to the result of the election. Appellants have the right to go behind all that, and ascertain what the vote in fact was. (*Smith* v. *Pease*, 27 N. Y. 45.)

Appellants had a right to have tried the other fact, as to whether or not each legal voter in the county was asked by the judges of election his choice for the several points named in the act. (Session Laws, 1872, p. 29.)

The subject-matter of the act in question is not expressed in the title, as required by the Constitution. (Art. 4, § 20, Const.; *Powers* v. *Larabee*, 1 Wis. 200; *State* v. *Silver*, 14 Minn. 524; 9 Nev. 227.)

The Legislature cannot create the emergency in the act itself; but the emergency, to make a law take effect by virtue thereof, must be one existing independent of the act. (Art. 4, § 28, Const.)

The Legislature cannot delegate to the people of any county the power to locate a county seat. (Art. 1, § 21, Const.; Art. 4, § 1, Id.; *Barto* v. *Himrod*, 4 Seld. 483; *Knowlton* v. *Williams*, 5 Wis. 308; *Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, Id. 122; *Geebrick* v. *The State*, 5 Iowa, 491; *Parker* v. *Commonwealth*, 6 Penn. 507; *Maize* v. *The State*, 4 Ind. 342; *Cathren* v. *Lean*, 9 Wis. 279; *Ex parte Wall*, 48 Cal. 279; Coolie's Con. Lim. 116.)

The question was not submitted to the voters of the county exclusively, but to all those who could legally vote

in the county for Presidential electors, which included every voter in the State. (5 Wis. 308.)

The act is incomplete. Its becoming a law depends upon the act of the citizens of the county. (§ 3 of the act.)

The taking effect of the law depends upon the act of the Governor. (15 Barb. 112; Id. 122.)

The effect of the act is to authorize the citizens of the county to repeal the prior act of 1864, locating the county seat at La Grande. (5 Iowa, 491; 23 Barb. 34.)

*Mallory & Shaw,* for Respondents.

The canvass by the clerk and the proclamation of the Governor are conclusive. When the question arises collaterally, the decision of the canvassers cannot be questioned, but is presumed correct. (Cooley, Const. Law, 624.)

The act in question is not a delegation of authority to locate a county seat, and is constitutional. (Art. 1, Const. § 21; Art. 4, Id., §§ 20, 28; *Simpson* v. *Bailey,* 3 Or. 515; *Moore* v. *Packwood et al.,* ante, 000.)

The admission of illegal votes at an election will not necessarily defeat the election. It should appear that the result would have been different had the alleged illegal votes been excluded. (Cooley, Const. Lim. 620.)

To authorize an injunction, it must appear that the applicant has acted promptly, and has not impliedly authorized what he now objects to. (2 U. S. Eq. Dig. § 17, p. 65.)

Injunction is not the proper remedy in a case like this. The plaintiffs should have availed themselves of their remedy at law to contest the election. (Id. §§ 25, 32.)

By the Court, SHATTUCK, J. :

The objections to the decree of the court below are embraced in two propositions :

1st. That the pleadings presented issues of fact that ought to have been, but were not, tried.

2d. That the act of the Legislative Assembly in question was unconstitutional and void.

These propositions may be considered in the inverse order.

On the second proposition, the appellants submit that the subject matter of said act is not expressed in the title, as required by § 20, Art. 4 of the State Constitution. This point was directly before this Court at the September Term, 1869, in the case of *Simpson et al.* v. *Bailey et al.*, relating to the county seat of Umatilla County.

This case, so far as this point is involved, is so like that of *Simpson* v. *Bailey*, that we deem it settled by the decision in the latter case, and do not find cause to disturb the ruling; consequently, this objection by the appellant is not well taken.

Again, the appellants object that the Legislature cannot create the emergency in the act itself; but allege that the emergency, to make a law take effect by virtue thereof, must be one existing independent of the act.

We do not think this act is open to the objection here made. The Legislature does not pretend to create the emergency; it only declares that certain existing facts are an emergency. The object of the Legislative Assembly appears to have been to submit this question of location of the county seat to the people of Union County, at the Presidential election in 1872, in order to save the voters the time and expense of a special election; and the facts were, that this Presidential election was to be held before the act could take effect under the ninety-day limit of the Constitution, and that a special election would cause a great expenditure of time and money. This the Legislature decided to be an emergency authorizing it to put the act into force at once; and we think the act, in this particular, is within both the letter and spirit of § 28 of Art. 4 of the Constitution. This objection is not well taken.

Another objection is, that the Legislature cannot delegate to the people of any county the power to locate a county seat, and a large number of authorities are cited as sustaining the point made by appellants. This as a general proposition is true, but the act in question does not, either in terms or effect, delegate to the people of Union County the power to make a law. It enacts in substance (although the terms employed are not the best that could have been

chosen), that one of five places shall be the county seat of
Union County, when the legal voters of the county shall
have declared, in a certain mode, which one they prefer;
and that the place chosen by the majority of voters shall be
declared the county seat. The power of location is exercised
by the Legislative Assembly, but it takes effect in a particular
mode, or not at all, by a vote of the electors interested.
This is within the provisions of § 21 of Art. 1 of the Con-
stitution of Oregon. (*Simpson* v. *Bailey* 3 Or. 517; *Moore*
v. *Packwood*, ante, 000; *People* v. *Reynolds*, 5 Gilman, 1.)

The appellants also contend that the act is incomplete
and inoperative, because they say its becoming a law de-
pended upon the act of the citizens of Union County; that
the second election or vote on the question, was dependent
on the will of the voters of the State, and not on the will of
the Legislature, and that by the terms of the act the citi-
zens are authorized to repeal the law of 1864, which located
the county seat at La Grande.

All these objections are answered by what has been
already said, and by the authorities cited; but it is proper to
add that we think the act in question, in effect, locates the
county seat at such place as the legal voters of the county
shall, by a particular mode prescribed by the act, desig-
nate. The power of designation is not left by the act to
the arbitrary and uncontrolled choice of the people, but
they are required to limit their suffrages, in the first in-
stance, to five places: *Oro Dell, La Grande, Summerville,
Cove,* and *Union.* If, upon the first vote, no one place shall
have a majority of all the votes cast, then another vote
shall be taken at the next general election; but upon the
second vote, there are to be only two candidates—"the two
points receiving the greatest number of votes cast" are to
be voted for, and the one of these two which receives the
greater number of votes shall be declared the county seat.
The mode of canvassing the vote, and the proclamation of
the Governor, are substantially only modes of ascertaining
and publishing the result of the vote. This Court held at
the December Term, 1874, in *Moore* v.*Packwood* (ante, 325),
that an act which provided that a term of court should be

held at such time as the court should appoint, by an order entered in the journal, etc., and authorizing the court to appoint the time, was a valid act. This act authorizes the removal and re-location of the county seat, but leaves or refers the designation of the time and place of such removal or re-location to the electors of the county. In principle, this act is on the same footing as the one considered by the court in the case of *Moore* v. *Packwood*.

It is objected, however, that the act does not, in terms, submit the question of re-location to the electors of the county, but to the legal voters at a Presidential election. As we have before said, the phraseology of this act is not the clearest or the best chosen; but we think that a fair construction of the terms employed, can leave no doubt of the intention to submit the question to the legal voters of Union County alone. It is true that citizens of Oregon, not legal voters for county officers in Union County, might lawfully vote in Union County for Presidential electors, and that only electors of Union County, under the Constitution, could lawfully vote upon the question of location of county seat; but the court is not to presume that voters from other parts of the State went to Union County, or were there present to vote for Presidential electors, or, if such was the case, that they also voted upon this question of county seat. That is a question of fact to be averred and proven, as well as whether or not the judges of election duly inquired of the legal voters, as the act provides, what their choice was of the candidates for county seat.

And this leads to the consideration of the first proposition of the appellants. We think the matters of fact, which counsel claim should have been tried, do not constitute a cause of suit in equity—do not present a case wherein relief can be had by injunction. There is no special statutory provision for contesting an election for location of county seat; but we think that when the question, in such a case, is the qualification of the voter, the conduct of the judges or the legality of the canvass, the proper remedy is by mandamus, and not by injunction in equity. In this respect, the appellants have mistaken their remedy.

The decree of the court below should be affirmed.