CASE 36—PETITION EQUITY AND INDICTMENT—APRIL 4.

## Tabor v. Lander, &c.

## Haynes v. Commonwealth.

APPEALS FROM HANCOCK CIRCUIT COURT.

1. LOCAL OPTION—REPEAL OF STATUTE.—Where the general local option law had been voted into operation in a civil district of which a city formed a part an amendment to the city charter conferring for the first time authority on the city council to license taverns and coffeehouses, with the privilege of retailing liquors in the city, repealed the local option law so far as the city was concerned.

2. SAME.—The power to license and tax in such a case must mean an exclusive power, and, therefore, the general local option law can not again be voted into operation in the city. But, even conceding that it can be, the vote must be taken in the town alone, and not in the civil district, the amendment to the charter having at least separated the city from the civil district as a political division.

SWEENEY, ELLIS & SWEENEY FOR APPELLANT.

Whether or not the amended charter repealed the local option law as to the city, it is clear that the city, after its passage, had the right to regulate the liquor question for itself, and the city having taken a separate vote, as it had a right to do, and voted in favor of the sale of liquor, the local option law no longer existed in the city. (Commonwealth v. Bogie, 1 S. W. Rep., 532; Commonwealth v. Cain, 14 Bush, 533; Commonwealth v. King, 86 Ky., 436.)

W. J. HENDRICK, ATTORNEY-GENERAL, FOR COMMONWEALTH.

1. The amendment of April 30, 1888, was not intended as a repeal of the local option law for district No. 1, in Hancock county. The legislative will had united them as a political division on the question of the sale of liquor, and the amendment referred to could not, and did not, divorce them. (Commonwealth v. Cain, 14 Bush, 533; Commonwealth v. Bogie, 1 S. W. Rep., 532; Commonwealth v. King, 86 Ky., 436.)

2. Even if the amendment attempted to repeal the local option law it was void, because the subject of the act is not expressed in the title.

W. S. MORRISON FOR APPELLEES LANDER, &c.

1. The city of Hawesville had no authority to vote on the liquor question in April, 1892, as two years had not elapsed since the election was held in magisterial district No. 1, in August, 1890.

2. Even if two years had elapsed there would still have been no authority to take a separate vote in the city. Where the local option law has by vote become operative over the whole of a magisterial district, it is not within the power of a city lying within the district to take a separate vote on the question and thereby declare the law not to be in force in any part of the district. (Young v. Commonwealth, 14 Bush, 161; Commonwealth v. King, 86 Ky., 436.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On the petition of the appellees, Lander and others, filed in the circuit court in May, 1892, a writ of prohibition issued against the appellant, Tabor, as judge of

the Hancock County Court, who is alleged to be about
to grant licenses to sell spirituous, vinous and malt
liquors within the limits of Hawesville, a city em-
braced within the territorial limits of magisterial dis-
trict No. 1, in Hancock county.  In this district, it
is alleged, at a duly appointed election, held in Au-
gust, 1890, a majority of the legal voters had voted
against the sale of such liquors, and of which fact
due record had been made in the proper office.  Such
is the first-named proceeding.

In the second case mentioned above, the appellant,
Haynes, having obtained a license from the county
court (Tabor, judge) to sell such liquors in the town
named, and being engaged in so selling, was indicted
in May, 1892, for violating the "local option" law so
called, and on an agreed state of fact, the lower court
having perpetuated the writ of prohibition against
county judge Tabor, and found Haynes, the liquor
dealer, guilty of violating the law named, they have
each appealed from the judgments against them, and
as the main question in each case is the same, they
will be heard together.

That question is, whether or not in May, 1892, the
local option law was in force in the town of Hawes-
ville.

In the district a vote was taken under the provis-
ions of the law, in August, 1884, and again in 1890,
resulting each time against the sale.  In April, 1888,
an amendment to the charter of the city of Hawes-
ville was adopted by the Legislature, conferring for
the first time authority on the city council to license
taverns and coffee-houses with the privilege of retail-

ing liquors in the city, and it is now insisted that this act repealed the operation of the local option law then in force, so far as the city was concerned. In the case of Gifford v. Commonwealth, 2 Ky. L. Rep., 437, it was held by this court that a section in the charter of the town of Falmouth, passed by the Legislature in 1878, granting the council of that town the power to license and regulate the sale of liquors, operated as·a repeal of the general local option law, which was then in force in the town, because repugnant thereto and inconsistent therewith, and the same construction has been adopted by the courts of other States (Whisenhunt v. State, 18 Texas App., 491). And it would seem, outside of this direct authority, that such must be the necessary result of such legislation.

The Legislature has complete control of the subject. It may say that liquors shall not be sold in a given territory, or that the question of its sale shall be left to all the voters therein, or that liquors may be sold in a given locality, or that the question may be left to the council of a city or board of trustees. In this case, the legislative body must have known that the local option law had been voted into operation in Hawesville, and was in force in April, 1888, and its action in making it *thereafter lawful* for the council of said city to fix the rate of city tax for the privilege of selling liquors by retail in the city, must have been intended to vest the power of licensing the sale in a different set of electors—that is, in the councilmen of the city, instead of the voters in the district.

The city was incorporated in 1882, and while the

powers of the city council are set out in great detail, and the trades and occupations placed under the control and regulation of that body are extraordinarily numerous, the right to license, regulate or control the liquor trade is nowhere conferred ; and while the local option law was in full force, and in operation in the district, the Legislature enacts a law directly repugnant to, and inconsistent with, the general law, and specially empowers the city authorities to exercise its taxing power on this special traffic for the benefit, it is alleged, of the common schools of the city.

We think a clear intent to repeal or suspend the operation of the general law is evident.

It was, in effect, a separation of the two political divisions—the city from the civil district.

But, thereafter, and in 1890, the vote was taken in the district and resulted against the sale, and it is insisted that this should operate to re-enact the general law, or, at least, again put into force and effect that law, even if it had been suspended by this amendment. We can not see how this could be. If the right to regulate the traffic was conferred on the council, a vote of the people, and that too of a people in an outlying territory, can not affect the legislative power so conferred. The power to license and tax in such a case must mean an exclusive power. Any other construction would result in irreconcilable conflict of authority.

Prior to the passage of the local option law the councils of the various towns and cities of the State, as a rule, had the right to license and tax this business. The local option law was enacted, applicable

to all alike, and it was the manifest intention of the Legislature to have this law apply to such towns and cities, in spite of the right theretofore conferred to so control this trade by the councils, &c. But when that law has been put into operation in a civil district, and the Legislature, as in this case, deliberately confers that right or power on another and specified tribunal, it must be supposed to have intended a change in the manner of controlling and regulating the traffic; and until this special act be repealed, the special power and right therein conferred must be regarded as the exclusively controlling power.

It may be observed in this case that before exercising the power conferred under the amendment, the vote was again submitted to the people of the city of Hawesville, as provided by the general law, and this resulted in favor of the sale. This, whether necessary or not, was in pursuance of the spirit of the local option law. The least possible effect to be given the amendment of April, 1888, is that of separating or divorcing the theretofore existing political divisions, and of recognizing the city]as having a distinct and separate entity, and as a separate and distinct political division; and in this view the most that can be required of the city is to take the vote on the question of the sale as such distinct division, and this was done by the vote of 1892. We think it, clear, therefore, that the right to issue the license existed, and that when issued it afforded protection to the licensee. It is not necessary to consider other minor questions raised by counsel for the appellants. The petition should have been dismissed and the writ of

prohibition quashed, and the finding in the penal case should have been for the defendant.'

For these reasons the judgments in both cases are reversed, with directions to dismiss both proceedings.