Argued May 3, decided May 25, rehearing denied July 20, 1909.

STATE ex rel. *v.* MALHEUR COUNTY COURT.

[101 Pac. 907; 103 Pac. 446.]

PLEADING—ALLEGATION AS TO NOTICE—CONCLUSION OF LAW.

1. An allegation as to the notice of a local option election, that "no notice was ever issued or posted as by law provided," is a mere statement or conclusion of law, presenting no question of fact whether a notice was ever issued or posted.

MANDAMUS—SCOPE OF REMEDY.

2. If the making of an order is a mere ministerial act, involving no exercise of judgment or judicial power, mandamus is the proper remedy to compel it; but where an act is judicial or involves the exercise of judgment or discretion, and such judgment has been exercised, mandamus will not lie to compel amendment or correction thereof, though the action was erroneous.

MANDAMUS—ACTING IN JUDICIAL CAPACITY—ORDER OF PROHIBITION—
        COMPELLING AMENDMENT.

3. The county court, in including a city in an order of prohibition where it was claimed to be exempt by its charter from the operation of the local option law, acted in a judicial capacity, and the circuit court cannot compel it by mandamus to amend its order in this respect.

STATUTES—REPEAL BY IMPLICATION.

4. A clause in a city charter repealing all acts and parts of acts in conflict therewith, without reference to what particular acts it was intended to affect, would only accomplish a repeal by implication.

STATUTES—REPEAL BY IMPLICATION.

5. A repeal by implication only arises when both statutes cannot be reconciled with each other by any reasonable interpretation, or where the later act shows a clear intent by its terms to supersede the prior act.

STATUTES—REPEAL OF GENERAL STATUTES—OPERATION OF MUNICIPAL
        CHARTER PROVISIONS.

6. From the re-enactment of municipal charter provisions already in force with some additions thereto, and which is the old charter in a new dress, an intent to repeal a prior general statute will not be presumed.

STATUTES—REPEAL BY IMPLICATION.

7. Repeals by implication are not favored, and repugnancy between two statutes should be clear before a court is justified in holding that a later statute impliedly repeals an earlier one.

INTOXICATING LIQUORS—LOCAL OPTION LAW—REPEAL BY CITY CHARTER.

8. Section 18, Act February 21, 1905 (Sp. Laws 1905, p. 127), incorporating the City of Vale and repealing the act incorporating the town, gave the council power to "license, tax, regulate, or prohibit barrooms, drinking shops,

saloons, tippling houses, * * and all other places where spirituous, malt, or vinous liquors are sold," and also prohibited the issuance of any license for any less amount than that required by the State law. This section practically re-enacted Section 14 of the original town charter with some additions. No reference, however, was made in the new charter to the local option law. *Held,* that this did not repeal the local option law as to such city.

MANDAMUS—SUBJECTS OF RELIEF — COURTS AND JUDICIAL OFFICERS — DECLARING RESULTS OF ELECTION.

9.  Session Laws 1905, p. 45, § 7, requiring the clerk and sheriff, respectively, to issue and post notices of special local option elections, and to enter of record their compliance with such duty, and provides that such record shall be *prima facie* evidence that all provisions of the law have been complied with. Section 10 requires the clerk to call to his assistance two justices of the peace, and make an abstract of the vote of such election for the information of the county court, and on the eleventh day after the election the court is required to meet and immediately make an order of prohibition, if a majority of the votes in the county as a whole are for prohibition. *Held* that, after the court had acted upon the evidence which the law required to be furnished it, mandamus will not lie to compel the court to make an order excepting a certain city in the county from the operation of the order of prohibition made by it; such order not being among the duties of the court under the statutes.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a proceeding in mandamus to compel the county court of Malheur County to amend an order of prohibition made by it in June, 1908. The writ sets forth: That the petitioners are residents, taxpayers, and citizens of the City of Vale, in Malheur County, engaged in retail liquor business in that city, and have large sums of money invested in the same; that the city charter was passed by the legislature on the 21st day of February, 1905; that the local option law went into effect June 24, 1904; that by the charter the city council was granted full power and authority to license, tax, regulate or prohibit the sale of spiritous, malt, or vinous liquors; that on the 30th day of April, 1908, a petition was filed, calling for a vote on the question of prohibition in the county of Malheur as a whole; that no separate petition for a vote on prohibition was filed for the City of Vale; that an election was held pursuant to such petition, notwithstanding the fact that no notices were ever issued or posted as by law provided; that said election resulted

in a majority of 250 votes in favor of prohibition in Malheur County; that at some date in June, 1908, the county court met in special session for the purpose of making an order of prohibition, and thereupon made and entered an order or pretended order of prohibition for the whole county of Malheur, which order bore no date, but specified that prohibition would be in force under the regulations of the local option law from and after July 1, 1908; that said order of prohibition is without authority of law; that it will work great and irreparable injury upon relators. and deprive them of their business, that by reason of the provisions of its charter, the City of Vale should have been excluded from the operation of the order of prohibition; and that said court was without authority to make any order that might limit the power of the common council regarding the sale of liquor.   Defendants demurred to the writ, and the demurrer was sustained, from which order relators appeal.   AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. George W. Hayes.*

For respondents there was a brief over the names of *Mr. John W. McCulloch,* with an oral argument by *Mr. Andrew M. Crawford.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. It is claimed by appellants that, irrespective of any view which the court below might have taken of the contention in regard to the plenary power of the City of Vale over the liquor traffic under the conditions of its charter, the allegation in the writ of failure to post notices of the election was sufficient to require the circuit court to hear and determine the case on that question. With this contention we are unable to agree. The writ is defective as to the allegation of want of notice. Its language is: "No notice was ever issued or posted as

by law provided." In this language it followed the
petition. Had the pleader been content with alleging
that no notice was ever issued or posted, an issuable
fact would have been stated; but the addition of the
words, "as by law provided," makes the allegation a
mere statement of a conclusion of law. It is equivalent
to saying that, in the pleader's judgment, there was
something in the manner or time of posting, or in the
substance of the notices, that rendered them invalid.
There was therefore no question of fact to be tried by
the lower court.

2. Upon the second proposition presented, we think the
law is also with the respondent. It appears from the
writ that in June, 1908, 'the county court made an order
of prohibition which embraced the whole county of
Malheur, including the City of Vale, which appellants
claim was exempt, by the provisions of the charter,
from the operation of the local option law. If the making
of this order was a mere ministerial act, involving no
exercise of judgment or judicial power, mandamus would
probably be the proper remedy. 19 Am. & Eng. Enc. Law
(2 ed.), 740; *Simon* v. *Durham*, 10 Or. 52; *Boston Turn-
pike Co.* v. *Pomfret*, 20 Conn. 590. But if the required act
involves the evercise of judgment or discretion, or, in
other words, if it is a judicial act and such judgment
has once been exercised, mandamus will not lie to compel
a tribunal to amend or correct its judgment, even though
it may have acted erroneously. Tapping, Mandamus,
158, 160; High, Extra. Legal Remed. §§ 154, 188, 190.
Mr. High, at § 154, states the rule as follows:

"Mandamus will not lie to compel a court to give a
particular construction to a statute in a matter properly
within its jurisdiction. And in all such cases the writ
is refused regardless of whether the inferior tribunal
has decided properly or improperly in the first instance."
And again, at § 188, he says: "Nor will the writ be
granted to reverse the decisions of inferior courts, upon
matters properly within their judicial cognizance, or to

compel them to retrace their steps, and correct their errors in judgments already rendered." He further says (§ 190) : "Even if the party aggrieved has no right of appeal, or if a writ of error will not lie to the judgment or ruling of the court below, the same inflexible rule applies, and, if the court properly had jurisdiction of the questions presented for its determination, the want of any remedy by appeal affords no ground for the exercise of the jurisdiction by mandamus."

3. Now while the mere act of examining the clerk's abstract of the vote and declaring the result of an election may be, in many cases, largely ministerial, we are of the opinion that, under the circumstances disclosed in the case at bar, the duties of the county court were, to a large extent, judicial. In the present case the court was confronted with a delicate question of law. If the City of Vale was exempt, by the conditions of its charter, from the operation of the local option law, it was the duty of the court to make that exemption apparent in its order. If it was subject to the provisions of that law, it was its duty to make an order which would apply to the county as a whole. A question of law was before it to be decided, and, in passing upon it, the court acted just as much in a judicial capacity as we do in passing upon the same question on appeal. We think the court below was correct in holding that it had no power to compel the county court to amend its order of prohibition.

4. But waiving these preliminary questions and coming to the main contention of appellants, was the action of the county court, in entering an order of prohibition for the entire county of Malheur, erroneous? The theory of appellants is, that the act of February 21, 1905 (Sp. Laws 1905, p. 127) repealed the local option law as to the City of Vale, and that no election for the county of Malheur, as a whole, could thereafter be held under the provisions of that law. They claim that the Vale charter, act of 1905, operates both as an express and an implied repeal of the local option statute, so far as the

City of Vale is concerned. We will consider both these propositions together. For a clear understanding of the subject, it will be necessary to consider chronologically the history of charter legislation, with reference to the town of Vale and its relation to State legislation, in regard to the sale of intoxicating liquor. The first charter of Vale was enacted February 21, 1889 (Sp. Laws 1889, p. 366). By section 18 subsec. 14, of that charter, the town council is given, among other grants of power, the right to "license, tax, regulate, restrain, suppress and prohibit barrooms, groceries, tippling houses, etc., and all citizens within the corporate limits shall be exempt from any county license, which is or may hereafter be imposed by the general laws of the State; that no license for the sale of spirituous, vinous or malt liquors shall be issued for a less sum than the amount of such license required by the general laws of the State." In 1901 the charter was again amended (Laws 1901, p. 281) in other particulars, but section 18, subsec. 14, was retained entire.

The local option law took effect June 24, 1904. On Feb. 21, 1905, an act was passed entitled "An act to incorporate the City of Vale and to provide a charter therefor and to repeal an act entitled 'an act to incorporate the town of Vale,' filed in the office of the Secretary of State, February 21, 1889, and to repeal an act amendatory thereto, passed February 15, 1901." An undescribed danger to the peace and health of the good citizens of Vale being somewhere concealed in the old charter, an emergency clause put the new one in force immediately. Sp. Laws 1905, p. 127. By section 18 of said act the council is given power among other things, "to license, tax, regulate or prohibit barrooms, drinking shops, saloons, tippling houses * *; and all other places where spirituous, malt or vinous liquors are sold." Section 18 also contains the identical provision, prohibiting the issuance of a license for any amount less than that required by the State law, which is found in both previous charters

and contains further new and salutary restrictions upon the liquor traffic not necessary to mention in this opinion. It may be premised that, at the time this new charter went into effect, prohibition had not yet invaded Malheur County, and that the town of Vale, up to the time of the prohibition election in question in this case, was not restricted in any way in dealing with the liquor business as it saw fit. While the local option law was technically in force all over the State, from June 4, 1904, its effect was merely that of an enabling act authorizing the citizens of any particular locality in a convenient way to express their desire to have or not to have liquor sold within designated boundaries. Such was practically the holding of this court in *Renshaw* v. *Lane County,* 49 Or. 526 (89 Pac. 147). Such being the effect of the law, it had no effect *proprio vigore* upon the city charter of Vale, and there could be no conflict between the two statutes. From June 24, 1904, until the last election, the town of Vale could license the sale of liquor within its limits, and did so. The two laws were not repugnant. They both could be in force, and actually were in force, at the same time. It will be noticed that there was no reference to, or express repeal of, the local option law by the charter act of 1905. The clause repealing all acts and parts of acts in conflict with the charter act, without reference to what particular acts it was the intention of the legislature to affect, would only accomplish a repeal in any event by implication.

5. A repeal by implication only arises when both statutes cannot be reconciled with each other by any reasonable interpretation, or where there is a clear intent shown by the terms of the latter act that it shall supersede the other. We do not think such intent is manifest in the charter act of 1905.

6. As we have observed before, there is no mention made of the local option law in the title, while the original charter act of Vale and the act of 1901, amendatory, are

both mentioned, and the intent to repeal them plainly and unequivocally indicated. The maxim *"Expressio unius, exclusio alterius,"* may well be invoked in this instance. While the title of the act professes to grant a new charter to the City of Vale, it is plain that section 18 of the new charter is practically a re-enactment of section 14 of the original charter, with some additions in the direction of definiteness. The power to license and regulate barrooms, groceries, and tippling houses, granted in the first two charters, is only more clearly expressed by adding the words "drinking shops, saloons and all places where spirituous, malt or vinous liquors are sold." Changing the name of the place from the "town of Vale" to that of the "City of Vale" does not alter the fact that the lawmaking power was legislating in respect to the same place and the same people. The section in question is not new legislation, but a re-enactment of provisions already in force, with some additions thereto. It is the old charter in a new dress. Under such conditions an intent to repeal a prior general statute will not be presumed. *Allison* v. *Hatton,* 46 Or. 370 (80 Pac. 101); *Renshaw* v. *Lane County,* 49 Or. 526 (89 Pac. 147); *Hall* v. *Dunn,* 52 Or. 475 ( 97 Pac. 811) .

7. Repeals by implication are not favored, and repugnancy between two statutes should be clear before a court is justified in holding that a later statute impliedly repeals an earlier one. Endlich, Interp. of Stat. § 210; *Booth's Will,* 40 Or. 156 (61 Pac. 1135: 66 Pac. 710); *Bower* v. *Holladay,* 18 Or. 491 (22 Pac. 553).

8. The cases arising under local option laws of other states and cited in appellant's brief are not analogous to the case at bar. In *Tabor* v. *Lander,* 94 Ky. 237 (21 S. W. 1056), cited by appellant, the local option statute had been put in force by vote in a certain district, including the town of Hawesville. The whole district had given a majority for prohibition, but Hawesville had given a majority against it. Subsequently, and while

the district was still prohibition territory, the legislature amended the charter of Hawesville, so as to confer upon the town for the first time the right to license the sale of liquor.  Under the circumstances the court held that a clear intent to repeal the local option law was indicated. In *State* v. *Clark,* 54 Mo. 17 (14 Am. Rep. 471), the court held that the language of the amendatory statute indicated a clear intent on the part of the legislature to repeal a State statute, by an amendment to the city charter of St. Louis.  The case is not in point.  In *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811), the amended charter of Medford gave the city council power to license and regulate the sale of liquor "irrespective of any general law on this subject enacted by the legislature or the people at large."  Here the intent to repeal is not concealed or left to conjecture.  It is "writ large" in the very terms of the act itself.

We are of the opinion that the local option law was not repealed as to the City of Vale by the charter act of 1905.

The judgment should be affirmed.        AFFIRMED.

---

Decided July 20, 1909.

## ON PETITION FOR REHEARING.

[108 Pac. 446.]

MR. JUSTICE MCBRIDE delivered the opinion of the court.

9. The motion for rehearing is based principally on the proposition that mandamus was the proper remedy of plaintiffs in their attempt to compel the county court of Malheur County to make an order excepting Vale from the effect of the order of prohibition made by it.  As we held in our former opinion, and still hold, that the City of Vale was not exempt by the terms of its charter from the operation of the local option statute, the question whether mandamus would have been the proper remedy in case it had been so exempt is purely academic, and

all that was said on that subject was dictum. We do no disagree with counsel that a board, court, or person may be compelled to do an act purely ministerial, even though the doing of it requires him to exercise some judgment in his own mind as to what is the proper and lawful method; but, when he is called upon to declare the law, and to make an exception not made in the statute under whose terms he is attempting to act, he acts judicially. Plaintiffs were not asking the county court to make an order pursuant to the requirements of the local option statute, but asking that they ingraft thereon an order not contemplated therein, namely, excepting the town of Vale from its operation. Granting that the duties of the county court are purely ministerial, to what are they confined? Section 7 of the local option law (Session Laws 1905, p. 45) requires the clerk and sheriff, respectively, to issue and post notices of the special election, and to enter of record their compliance with this provision, and the statute provides that this record shall be *prima facie* evidence that all the provisions of the law have been complied with. Section 10 requires the clerk to take to his assistance two justices of the peace, and make an abstract of the vote for the information of the county court. Then on the 11th day after the election, the court is required to meet and immediately make an order of prohibition, if a majority of the votes in the county as a whole are for prohibition. Clearly the court, in making its order, acts upon the return of the sheriff and the abstract furnished by the clerk. The statute does not require it to hear testimony and conduct a fishing expedition to discover whether or not the sheriff and clerk have made a false return in respect to posting the notices or making the abstract. It must act "immediately." Now the writ does not traverse the return nor the abstract. It only attempts to traverse the fact that notices were posted; and, if an amendment were permitted to the writ, so that it should show that no

notices were posted, it would show no cause for mandamus proceedings against the county court. It acted upon the evidence that the law required it to act upon, and, its duties being ended, this court will not require it to again convene and to do its work over, and include therein the hearing of a contest on the facts that the local option law does not provide for. It has been suggested that, if we take this view, plaintiffs are left without remedy, but this does not logically follow. If, by the malfeasance of an officer, a false return was made, whereby the county court was deceived into making a false finding of the fact, the writer of this opinion feels certain that the law will afford plaintiffs an ample remedy. It is the boast of our jurisprudence that there is no wrong for which the law does not afford redress, and this case is no exception to the rule.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE KING delivered the following dissenting opinion.

I agree with the majority opinions in holding that the alternative writ does not state sufficient facts to entitle petitioners to the relief demanded, but for that reason only do I hold that the remedy sought to be invoked will not lie. The effect of the majority opinions, however, is to hold that, even though sufficient facts were stated to demonstrate that the election was void, mandamus would not be the proper remedy. With this conclusion I do not agree. If at the time the proceedings were instituted the county court had not declared the vote, injunctive relief would have been available, but, since there is nothing left, so far as the court is concerned, to enjoin, this remedy, it occurs to me, cannot well be invoked. In fact it is so held in *McWhirter* v. *Brainard*, 5 Or. 426. Under the holding of this court in *Raper* v. *Dunn,* 53 Or. 203 (99 Pac. 889) and *Garrison* v. *Malheur County Court,* 54 Or. 269 (101 Pac. 900), review will lie, from which it follows that, unless the remedy by

mandamus is available, petitioners are without a remedy. In a very clear and well-reasoned opinion by Mr. Justice BRANNON, in *Marcum* v. *Pilot Commissioners,* 42 W. Va. 263 (26 S. E. 281: 36 L. R. A. 296), it is held that the inefficiency of all other remedies required that mandamus should be recognized, even though the acts involved were of a quasi judicial nature . If the rule invoked by the majority in this case is to prevail, it may become necessary to recognize a suit in equity to vacate the order of the court as the proper procedure, else make an exception to the well-established principle suggested by Mr. Justice MCBRIDE that "there is no wrong for which the law does not afford a remedy," but why the necessity of further drawing upon a court of equity, when the same result can as readily and conveniently be accomplished by the proceeding before us? It is true petitioners have sought an adjudication to the effect that Vale is without the operation of the local option statute, and this court has held that the charter does not have the legal effect insisted upon in that respect; and in that I concur, but let it be remembered that the further position is taken, and so attempted to be pleaded, that the election in the entire county is void, and it is conceded that, if sufficiently pleaded, the position would be well taken. This could be done by amendment, to allow which is within the discretion of the court where pending; and I know of no reason why the same privilege should not be granted the petitioners in this respect as was extended to the pleaders in a like case: *State* v. *Richardson,* 48 Or. 309 (85 Pac. 225: 8 L. R. A. [N. S.] 362) ; and also recognized in *Fishburn* v. *Londerhausen,* 50 Or. 363, 377 (92 Pac. 1060, 1065: 14 L. R. A. [N. S.] 1234, 1242) and *Powell* v. *Dayton,* 14 Or. 22 (12 Pac. 83). Nor can it make any difference that the prayer asks relief as to the town of Vale only; for, if the election in the entire county is void, it must necessarily be ineffectual as to

the lesser district, Vale, regardless of whether the language of the charter is sufficient to take the locality out of the operation of the local option law or not. The question, therefore, as to the effect of the charter upon the general law, when viewed in connection with the other points presented, becomes unimportant. But conceding that the effect of the language of the charter was one of the question to be determined by the county court in connection with other features, before declaring the result of the vote, I think the acts of that body are ministerial only, and cannot properly be classed as judicial. Nor can the fact that one of the members is a judicial officer make any difference in this respect. It is nothing unusual for ministerial duties to be imposed by statute upon judicial officers, the performance of which often requires the application, and thereby the interpretation, of laws. As stated by the court *in re Harris*, 12 Misc. Rep. 228 (33 N. Y. Supp. 1106) : "It is not every exercise of judgment by a ministerial or administrative officer or body that can be held to be the exercise of a judicial function or judicial act. A sheriff is required to determine, at his peril, whether a process he is required to execute is fair upon its face, but such exercise of his judgment is not a judicial act." To the same effect, *Speer* v. *Stephenson* (Idaho) 102 Pac. 365, 371; *State* v. *County Judge*, 7 Iowa 187.

It is unnecessary, however, to look beyond our own jurisdiction for authorities upon this subject. As above stated, this court in *McWhirter* v. *Brainard,* recognized mandamus as the proper remedy to test the qualification of voters, the legality of the conduct of judges, as well as other matters incidental to the canvass of an election called to determine the selection of a county seat, notwithstanding these questions involve some intricate points of law, or mixed questions of law and fact. So, too, in *Shively* v. *Pennoyer,* 27 Or. 33 (39 Pac. 396), the same remedy was invoked to compel the execution of a deed

by the board of land commissioners, in which instance it was first necessary to determine whether the applicant had complied with the requirements of the law on the subject. *State* v. *Malheur County Court* was a special proceeding instituted against the county judge and commissioners to compel them as a court to declare the result of an election held November 8, 1904, for the purpose of determining whether the sale of intoxicating liquors as a beverage should be prohibited in Nyssa precinct. The county judge in his answer expressed a willingness to make the order sought to be enforced, while the commissioners after denying the material averments of the writ, alleged, among other things, that the local option act contravened certain clauses of the constitution of the State, and that the notices of the election were not printed until 16 days prior to the election. It thus appears that there were questions to be determined by the county court in that case equally as judicial as any involved here. In considering that phase, Mr. Justice WOLVERTON, in *State* v. *Malheur County Court,* 46 Or. 519 (81 Pac. 368), holds the duties of the court in this regard to be ministerial only. I think, therefore, the conclusion reached on this point by the majority, inconsistent with all previous adjudications by this court upon these points.

In conclusion, I understand the majority to hold, in effect: (1) The county court in declaring the result of a local option election acts in judicial capacity, by reason of which mandamus will not lie; and (2) even were it successfully averred that the election was void, petitioners have mistaken their remedy. I think the holding as to both positions in conflict with the previous adjudications on the subject. If the majority opinions in this case and in *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439), are to stand, all previous decisions by this court bearing on the subjects therein discussed should, in order that there may be no further misunderstanding among the courts and bar upon the subject, be given a respectable

burial by expressly overruling them.   I think sufficient doubt as to the correctness of the conclusions reached exists to justify a rehearing in this court, and that it should be so ordered.