Argued March 12, decided April 15, 1913.

### CITY OF WOODBURN *v.* APLIN.

(131 Pac. 516.)

**Intoxicating Liquors—Bonds—Sufficiency in Number of Sureties —Surety Companies—Statutes.**

1. Since, in amending by initiative the charter of the City of Woodburn on April 27, 1909, chapter 10, § 2, of the charter, as amended by the legislature February 7, 1899 (Sp. Laws 1899, p. 526), requiring "two or more sufficient sureties" on liquor bonds, was copied without change, it is not to be regarded as a new statement of the law, and is controlled by Laws 1899, p. 193, enacted February 20, 1899, providing that where a surety com-

pany executes a bond there is a full compliance with any law, charter, or ordinance, demanding that such bond be signed by one or more sureties.

### Intoxicating Liquors—Admissions—Action on Liquor Bond—Proceedings in Criminal Action.

2. In an action on the bond of a liquor dealer, proceedings in the recorder's court wherein the defendant pleaded guilty to the charge on a statement of the same facts assigned as a breach of the bond, except that the place of such breach, which was a sale to a minor, was only charged to have been within the city limits, and not at defendant's place of business, are competent evidence to show at least that a sale was made to a minor, on the same footing as any other oral admission.

### Intoxicating Liquors—Liquor Dealers' Bonds—Place of Breach.

3. In an action on a liquor dealer's bond, given in connection with a license to do business at a place named, and conditioned for the keeping of an orderly house and for compliance with law, etc., violations of law at that particular place must be shown to render the surety liable.

### Appeal and Error—Invited Error—Evidence.

4. Where a recorder was testifying as to what a defendant in an action on a liquor dealer's bond had said in making a plea in a criminal action concerning the same breach, and defendant objected that the record was the best evidence, he cannot complain if plaintiff introduces such record.

### Intoxicating Liquors—Bonds—Place of Breach—Evidence.

5. In an action on a liquor dealer's bond given in connection with a license to do business in a certain place, evidence held to warrant a finding that the breach complained of was committed at such place.

### Judgment—Res Judicata—Nature of Judgment—Criminal Prosecution.

6. In an action to forfeit a liquor dealer's bond for a violation of law, the plaintiff was bound to prove the breach as a new proposition, without reference to a prior conviction for the same violation in the recorder's court.

### Witnesses—Impeachment—Inconsistent Statements.

7. In an action on a liquor bond, plaintiff can introduce affidavits of two of its witnesses made in a criminal action in

regard to the same violation of law to explain the apparent inconsistency of using such witnesses who gave evidence palpably adverse to the plaintiff.

### Witnesses—Responsiveness of Answers—Motion to Strike.

8. Where the court had ruled that testimony should be confined to or about a certain time, and a witness was asked what a person was doing about the date given, a motion to strike the answer unless the witness specified the time was properly denied.

### Pleading—Objections to Evidence as Not Within Pleading.

9. In an action to forfeit a liquor dealer's bond given in connection with a license to do business at a certain place, it is too late on appeal to urge for the first time that a breach, regarding which there was testimony, was not alleged to have occurred in the place named in the bond.

### Intoxicating Liquors—Dealer's Bonds—Allowing Minors to Loiter —Evidence.

10. In an action to forfeit a liquor dealer's bond, evidence held to warrant a finding that defendant allowed a minor to loiter in his place of business.

### Intoxicating Liquors—Harmless Error—Evidence—Issues— Pleading.

11. In a suit on a liquor dealer's bond, the admission of the records of the common council declaring a forfeiture of the bond was not erroneous, where such forfeiture had been alleged in the complaint and admitted by the answer.

From Marion: PERCY R. KELLY, Judge.

Statement PER CURIAM.

This is an action by the City of Woodburn, a municipal corporation, against Gilbert Aplin and the United States Fidelity & Guaranty Company, a private corporation, to recover money. The admitted facts are that Aplin made a written application to the mayor and the common council of Woodburn for a license to sell spirituous, vinous, fermented, and malt liquors in quantities less than a gallon within that city for the term of one year from January 1, 1910; the business to be conducted in a build-

ing situated on the south half of lot 3 of block 2 of that city. With the application, Aplin tendered the sum of $600 in payment of the license and also offered a bond in the sum of $1,000, executed by himself as principal and the United States Fidelity & Guaranty Company as surety. The condition of the undertaking recites that, pursuant to the written application therefor, a license had been issued to Aplin as requested, stating the term of the privilege and the place of business, and provides as follows:

"Now, therefore, if said Gilbert Aplin shall keep an orderly house, will comply with all the laws of the State of Oregon, and with all the requirements of the city charter and of the ordinances of the City of Woodburn, then this obligation shall be void, otherwise to remain in full force and virtue."

The complaint alleges the corporate character of the plaintiff and of the surety on the bond, states the facts hereinbefore set forth, and avers, in effect: That on January 4, 1910, the bond so tendered was accepted and approved by the common council of Woodburn, whereupon the license applied for was issued to Aplin pursuant to which he immediately engaged in business at the place designated; that Aplin, in disregard of the provisions of Ordinance No. 161 of the City of Woodburn, a copy of which is made a part of the complaint, in disobedience of certain statutes of Oregon, and in violation of the terms and conditions of the bond, "did on or about the 16th day of November, 1910, in the said place of business wrongfully and unlawfully give, sell, furnish, and supply one Kenneth Sylvester with spirituous, malt, and vinous liquors, to wit, whisky, beer, brandy, and wines, the said Kenneth Sylvester then and there being a minor under the age of 21 years, to wit, of the age of 18 years." That the common council of Woodburn on December 6, 1910, duly declared the defendant's bond forfeited and directed the city attorney to collect the sum named there-

in. That by reason of the premises, and in violation of such ordinance and of the statutes of Oregon referred to, the condition of the bond and such undertaking became forfeited to the plaintiff, and the defendants became liable to it in the sum of $1,000. For a second cause of action the complaint alleges the facts relating to the application for the license, the giving of the bond, the payment of the fee, and the issuing of the license, etc., as hereinbefore stated, and avers that Aplin in violation of such ordinance and of certain statutes of Oregon, and in disregard of the terms and conditions of the bond, "did on or about the 16th day of November, 1910, in the said place of business, wrongfully and unlawfully permit and suffer Kenneth Sylvester, a minor, under the age of 21 years, and of the age of 18 years, to loiter and remain in said room and said place of business where the said defendant, Gilbert Aplin, was then and there engaged in the sale of vinous, malt, and spirituous and intoxicating liquors." The remaining averments of the second cause of action are the same as set forth in the first cause. For a third cause of action the complaint alleges the same facts as are set forth in the first cause, and contains an averment as follows:

"That the said Gilbert Aplin, in disregard of and in violation of the provisions of section 10 of said ordinance 161, and in disregard and in violation of the terms and conditions of said bond, did on or about the 5th day of December, 1910, sell, give to, and furnish spirituous, vinous, fermented, and malt liquors to one A. Emmet Austin; the said A. Emmet Austin at the said time and then and there being in an intoxicated condition."

Judgment was demanded for the sum of $1,000. These so-called separate causes of action are nothing else than allegations of different breaches of the same obligation, and, as there can be but one recovery on the same bond in a case of this kind, all the violations of its terms could and should have been united in one statement of a single

cause of action. On that basis the matters involved will be discussed in this opinion. A general demurrer to the complaint was overruled. The answer admitted the whole complaint, except the alleged unlawful sales to the minor and to the intoxicated person and the minor's permitted loitering in the saloon, which latter averments were denied. At the trial, after the evidence was taken, the defendants moved for a verdict for the reason urged in the demurrer, and because there was no evidence to show that the alleged breaches of the bond occurred in the building named therein. This motion was denied and the jury returned a verdict in favor of the plaintiff for $1,000. The defendants appeal from the resulting judgment.                                    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. John Bayne.*

For respondent there was a brief with oral arguments by *Mr. George G. Bingham* and *Mr. Hiram Overton.*

Opinion PER CURIAM.

1. It is maintained by defendant's counsel that May 8, 1905, the City of Woodburn duly enacted Ordinance No. 161, section 2 of which provides generally that an applicant for a liquor license shall with his petition tender a good and sufficient bond therefor in the sum of $1,000, executed to the City of Woodburn with two or more sufficient sureties, the bond to be conditioned that the applicant will keep an orderly house, and that he will comply with all the requirements of the charter and ordinances of that city and with the laws of the State of Oregon, and since it appeared from an inspection of the copy of the obligation attached to the complaint as an exhibit that the name of only one surety was subscribed to the undertaking, the complaint did not state facts sufficient to constitute a cause of action, and, such being the case, errors were committed in overruling the

demurrer and in refusing to direct a verdict for the defendant.

A statute was approved February 20, 1899 (Laws 1899, p. 193) authorizing surety companies to transact business in Oregon. Section 6 of that enactment provided generally that, whenever any bond was required by the charter or ordinance of any municipality with surety or sureties, such bond might be executed by a surety company qualified to transact business within this State, and that an execution by a surety company of a bond should be in all respects a full and complete compliance with every requirement of the law, charter, or ordinance demanding that such bond should be executed by one surety or by one or more sureties, or that such sureties should be residents, or householders, or freeholders, or possess any other qualifications, and all municipalities should accept and treat such a bond, when so executed by a surety company, as conforming to and fully and completely complying with any requirement of the charter, ordinance, rule, or regulation, and that no justification on the part of the surety company should be required. The latter clause was amended February 24, 1903 (Laws 1903, p. 222), so as to compel a surety company to justify when so required. Section 4677, L. O. L.

It is argued by defendant's counsel that, while the section of the statute referred to authorizes the execution of a bond by a surety company in cases where a city charter or a municipal ordinance requires "one surety or one or more sureties" as specified in the act, the statute does not empower a surety company to execute a valid bond where "two or more sufficient sureties" are required as in Ordinance No. 161 of the City of Woodburn; that such an ordinance was enacted May 8, 1905, and subsequent to the amendment of section 6 of the act adverted to; and that the ordinance, being the latest legislation upon that subject, is therefore controlling.

In support of the legal principle thus insisted upon, attention has been called to the case of *Hillman* v. *Mayher,* 38 Tex. Civ. App. 377 (85 S. W. 818), where in construing the statute which demanded that the bond of a retail liquor dealer should be executed with "at least two good, lawful and sufficient sureties," it was held that such bond with only one surety was not a valid undertaking, and that a recovery of the penalties for a breach of its conditions could not be had against the principal or the surety.

In a later decision, however, by the same court there was interpreted a statute of Texas enacted in 1897 (Acts 25th legislature, c. 158), providing that a bond required by law, other than State and county official bonds, might be made by surety companies permitted to do business within that State, and such execution of a bond should constitute a compliance with the law requiring two sureties on a bond. In 1901 (Acts 27th legislature, c. 136) an earlier statute of that State was re-enacted, requiring liquor dealers' bonds to have "at least two good, lawful and sufficient sureties"; the enactment being the same in the original statute, except as to a clause relating to habitual drunkards, but not changing the number of bondsmen. In construing these statutes together, it was held that the re-enactment did not operate to repeal the act of 1897, in so far as it affected sureties on liquor dealers' bonds, requiring two sureties, etc., and that a liquor dealer's bond executed by a bonding company as sole surety was sufficient. *Taggart* v. *Hillman,* 42 Tex. Civ. App. 71 (93 S. W. 245). In that case a writ of error was denied by the Supreme Court of that State.

The City of Woodburn was originally incorporated February 20, 1889. Sp. Laws 1889, p. 303. The charter of that city was amended February 19, 1891 (Sp. Laws 1891, p. 861) ; February 6, 1895 (Sp. Laws 1895, p. 153) ; and February 7, 1899 (Sp. Laws 1899, p. 526). Section

2 of chapter 10 of the enactment last mentioned provided that a petitioner for a liquor license should with his application present to the common council a good and sufficient bond in the sum of $1,000, "with two or more sufficient sureties, to be approved by the council, conditioned," etc. This alteration of the charter having been made February 7, 1899, and the statute authorizing surety companies to execute bonds enacted February 20, 1899, the latter statute became applicable, making a surety company on a bond equal to "two or more sufficient sureties," which phrase, prior to February 20, 1899, evidently meant two or more persons. The latter enactment, therefore, superseded the amendment of the charter of February 7, 1899, permitting a surety company to execute a valid bond, as effectually as two or more sufficient individual sureties. *Taggart* v. *Hillman,* 42 Tex. Civ. App. 71 (93 S. W. 245). The charter of Woodburn was again altered by the legal voters of that city April 27, 1909, under an exercise of the initiative power, but no change was made in section 2 of chapter 10 as amended February 7, 1899, and "two or more sufficient sureties" are now required on a bond executed in that city.

The amendment of the charter by the legal voters not having made any alteration in that part of the enactment of February 7, 1899, relating to the number of sureties on a bond executed in the City of Woodburn, the parts of the earlier charter that were copied without change into the amendment which was adopted April 27, 1909, are not to be regarded as a new statement of the law, but are to be read as a portion of the earlier charter, and hence subject to, and controlled by, the provisions of section 6 of the act of February 20, 1899, authorizing a surety company to execute to a municipal corporation a valid bond. Endlich, Int. Stat., § 194; *Stingle* v. *Nevel,* 9 Or. 62; *Eddy* v. *Kincaid,* 28 Or. 537 (41 Pac. 156, 655) ;

*Small* v. *Lutz*, 41 Or. 570 (67 Pac. 421: 69 Pac. 825) ; *Hall* v. *Dunn*, 52 Or. 475 (97 Pac. 811: 25 L. R. A. [N. S.] 193) ; *State ex rel.* v. *Malheur County Court*, 54 Or. 255 (101 Pac. 907: 103 Pac. 446) ; *Allison* v. *Hatton*, 46 Or. 370 (80 Pac. 101) ; *Renshaw* v. *Lane County Court*, 49 Or. 526 (89 Pac. 147) ; *State* v. *Cochran*, 55 Or. 157 (104 Pac. ·419: 105 Pac. 884) ; *State* v. *McGinnis*, 56 Or. 163 (108 Pac. 132) ; *State* v. *Schluer*, 59 Or. 18 (115 Pac. 1057).

The bond in the case being sufficient, when executed by the defendant the United States Fidelity & Guaranty Company, as surety, no error was committed in overruling the demurrer to the complaint, or in refusing to instruct the jury to return a verdict for the defendant on that ground. *Capital Lumbering Co.* v. *Learned*, 36 Or. 544 (59 Pac. 454: 78 Am. St. Rep. 792) ; *Aldrich* v. *Columbia Co.*, 39 Or. 263 (64 Pac. 455).

2. It is maintained that errors were committed in admitting in evidence, over objection and exception, a copy of a criminal complaint wherein the City of Woodburn was plaintiff and Gilbert Aplin defendant, charging that the latter on November 16, 1910, unlawfully sold, within the corporate limits of that city, spirituous, vinous, malt, and fermented liquors to K. Sylvester, a minor; in permitting J. J. Stangle, the city recorder of Woodburn, to detail statements which were made to him by Aplin as to changing his plea of not guilty to such charge to a plea of guilty thereof; and in allowing the introduction as testimony of a copy of the journal of such recorder's court imposing upon Aplin a fine in pursuance of his amended plea. It is argued by the defendant's counsel that the surety company would not be liable on the bond unless Aplin unlawfully sold liquors at his place of business, and that, as the complaint before the recorder did not charge the sale to have been made there, an error was committed.

3. In view of the strictness with which the law construes the obligations of a surety, it may be conceded that, on account of this bond having been given in connection with a business which was required to be conducted in a certain place, it would be only violations of law at that particular place that would render the surety liable on the bond. *Clement* v. *Smith,* 128 App. Div. 859 (113 N. Y. Supp. 55) ; *County of Moniteau* v. *Lewis,* 123 Mo. App. 673 (100 S. W. 1107). The substance of the first breach assigned in the complaint is that on November 16, 1910, at the place of business of the defendant in question, he sold to a minor, Kenneth Sylvester, certain intoxicating liquors. The proceedings in the recorder's court wherein the defendant pleaded guilty to the charge on a statement of the same facts as are herein assigned as a breach were competent to prove one element on that breach, namely, the sale of liquor to a minor. It is admitted on the same basis as any other admission of that fact at any other time or place would be considered in evidence. It was not admitted in the character of a judgment binding conclusively upon the defendant because it was a judicial decision rendered between other parties. It stands on the same footing as an admission orally made to some other person who could have come upon the stand as a witness and testified to the same.

4. Moreover, when the recorder before whom the plea of guilty was entered was testifying, as well he might, to what the defendant said about pleading guilty on that occasion, the latter's counsel objected on the ground that the record of the plea was the best evidence. Thereupon in deference to the objection the record in question was introduced, and if it were error it was invited error of which the defendants have no right to complain.

5. It remains to be seen whether there is any testimony tending to prove the other elements of the first

breach assigned, namely, that the sale to the minor occurred in the place for which the security was given. The bill of exceptions discloses that K. Sylvester, the minor in question, testified that he was in Aplin's saloon, the place involved, on the day mentioned in the charge before the recorder. He is corroborated in this by Lester Kendall, another minor with him at the time. It is also disclosed that soon afterwards they were both drunk. These circumstances, which the jury was entitled to consider in evidence as tending to prove the place in which occurred the furnishing of the liquor to the minor, were admitted by the defendant Aplin in his plea of guilty. Restrained by Section 3, Article VII of the Constitution of the State, as it now stands, we cannot affirmatively say that there is no evidence to support the verdict on this point, and hence cannot reverse the case on that assignment of error. The fact sought to be established under the first breach assigned was that the defendant Aplin had violated the law in his place of business for which the bond was given by furnishing liquor to a minor.

6. The plaintiff was bound to prove this as a new proposition without reference to the conviction in the recorder's court; but, with all these circumstances disclosed in plaintiff's case, the court could not have properly directed a nonsuit on the breach involved. On that point the plaintiff made a case sufficient to be submitted to the jury.

It is true the bill of exceptions discloses that the defendant Aplin and his bartenders all unite in saying that no liquor was sold to the minor Sylvester on the occasion mentioned, and Aplin himself explains his plea of guilty on the ground that it was cheaper for him to pay a fine than to go to the expense of defending the case in the recorder's court and run the risk of a greater fine besides the expense of his resistance. With these matters we

have nothing to do. They were all before the jury, which is the only tribunal to pass upon the weight of the testimony.

7. Kendall and Sylvester themselves both denied on the witness stand that liquor had been furnished to them in the defendant's saloon. The plaintiff, by whom they were called, then exhibited the affidavits which they had subscribed before the recorder on November 16, 1910, to the effect that they had on that day purchased whisky and beer in the defendant Aplin's saloon in Woodburn. Kendall and Sylvester both admitted making these affidavits, but they said they were untrue,. whereupon, over the objection of the defendant's counsel, plaintiff introduced them in evidence. As stated by counsel for plaintiff and explained by the court at the time, these declarations were not admitted as substantive evidence, but only to show that these witnesses had made at other times statements inconsistent with their present testimony. The plaintiff was entitled to use these declarations to explain the apparent inconsistency of using witnesses who gave evidence so palpably adverse to the party calling them. Sections 861, 864, L. O. L. Under such circumstances no error was committed in receiving in evidence the affidavits mentioned.

8, 9. It will be remembered that the charge of selling liquor to Austin, an intoxicated person, is not alleged to have occurred in the place of business for which the bond was given. One witness testified that about November 25, 1910, he saw Austin, who was then so drunk he could hardly get up the street, in the saloon of the defendant Aplin buying whisky. Another witness testified that about December 5, 1910, he saw Austin getting liquor in the defendant's place of business and that he was drunk at the time. These witnesses testified somewhat at length, but the only objection made by the defendant's counsel to their testimony which was not sustained by the

court occurred in this wise: The court had ruled that the testimony should be confined to the time on or about the 5th day of December, 1910, the date named in the complaint assigning this breach and on motion of defendants' counsel the court struck out all that was said about Austin at any other time that the witness was in there drinking if he were drinking. The witness then on the stand, one of the two mentioned, was then asked:

"State to the court and the jury, when he was in there in this condition about the date given, what was he doing in reference to purchasing a drink?

"A. He was in there buying a drink.

"Q. What was he buying?

"A. Buying whisky as a general thing."

The defendants' counsel then objected to the answer unless the witness said when and moved to strike it out unless confined to the time. In view of the ruling of the court confining the time to the date mentioned in the complaint and the form of the question thus restricted, and to which the answer was responsive, we think there was no material error to be predicated upon this objection. If the defendant intended to rely upon the objection that this breach is not alleged to have occurred in the place named in the bond, it should have been brought to the attention of the court below. It cannot be urged here for the first time under the form of objection appearing in the record.

10. The second breach was to the effect that on November 16, 1910, in said place of business, the defendant Aplin allowed Kenneth Sylvester, a minor under the age of 21 years, to loiter in said room and place of business. On this point C. B. Aplin, who at the time kept a lunch counter in the back part of the saloon, testified for defendant as follows:

"They (referring to Kendall and Sylvester) came in as near as I can tell about 6 o'clock. Kendall came in,

somewhat of a little fellow. He was drunk. He offered me a drink out of a bottle over the counter. He says: 'My partner has fallen down in the alley; I guess he is asleep.' He walked into the back room, and in a few minutes came the other fellow. They went into the bar-room. The fellow behind the bar told my other brother. He said: 'They have just come in; you had better put them out.' He told him to put them out. He went in and put them out the back way the same way they came in. I didn't see them any more. That is the last time I saw them."

This of itself, in addition to the testimony which has already been made, is sufficient to go to the jury in support of the breach just mentioned as tending to show that the minor loitered in the saloon an appreciable length of time, by the tacit permission of Aplin the defendant here.

11. It is insisted that an error was committed in receiving in evidence over objection a copy of the records of the common council of Woodburn declaring a forfeiture of Aplin's bond; but, as this forfeiture was alleged in the complaint and admitted by the answer, proving the same does not constitute material error. In short, there was competent testimony for the jury to consider in support of the two breaches assigned as having occurred in the place of business of the defendant. No material error is assigned respecting the testimony concerning the breach alleged to have taken place in the saloon.

Proof of either one of the breaches which are assigned would be sufficient to sustain the judgment, which is therefore affirmed.                              AFFIRMED.