### Gertrude M. Severns v. Edgar C. Severns.

1.  CHANCERY PRACTICE—*Evidence as to Jurisdictional Essentials Should Be Preserved in Certificate of Evidence.*—The evidence as to all essentials of jurisdiction should be preserved in the certificate of evidence or by findings of fact in the decree.

2.  WORDS AND PHRASES—*Extreme and Repeated Cruelty.*—The circumstances of each case go far to determine the meaning of the expression, "extreme and repeated cruelty," as used in the statutes.    It does not always consist wholly in acts of physical violence.

3.  DIVORCE—*What Husband Must Prove Under Allegations of Extreme and Repeated Cruelty.*—Where the husband asks for a divorce from his wife upon the ground of extreme and repeated cruelty he must make out a clear case and it is not sufficient for him to show slight acts of violence on her part toward him, so long as there is no reason to suppose that he can not protect himself by a proper exercise of his marital rights.

4.  SAME—*Refusal to Cohabit Not a Ground For.*—The refusal by a wife to cohabit with her husband is not made a ground for a divorce by the Illinois statute.

Bill for a Divorce.—Error to the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge presiding.    Heard in the Branch Appellate Court at the March term, 1902.    Reversed and remanded.    Opinion filed February 27, 1903.

April 17, 1901, Edgar C. Severns, defendant in error, filed a bill for divorce from plaintiff in error, Gertrude M. Severns, alleging that they were married October 4, 1900, and lived together as husband and wife until January 29, 1901.

Defendant in error charged therein that his wife was guilty of "malicious impotency" and that from November 23, 1900, continuously to January 29, 1901, she refused to cohabit with him and that on divers days since their said marriage she has been guilty of extreme and repeated cruelty to him.

Answer of Mrs. Severns to bill filed November 19, 1901, denying charges of the bill. June 13, 1901, Mrs. Severns filed a cross-bill for separate maintenance; answer thereto by Severns, June 25, 1901. June 27, 1901, by agreement of parties cause set for trial. Decree was entered August 6, 1901, reciting that the cause came on to be heard upon the bill and cross-bill, answers and replications thereto, that the court proceeded " to try the issue herein, viz., whether the defendant has been guilty of extreme and repeated cruelty toward complainant in manner and form as charged in the bill of complaint, and after hearing the evidence the court found the issue in the affirmative; " and the court decreed therein that the marriage between defendant and complainant be dissolved.

WILLIAM G. ANDERSON, attorney for plaintiff in error; JOHN C. WILSON, of counsel.

HAMLIN & BOYDEN, attorneys for defendant in error.

MR. JUSTICE BURKE delivered the opinion of the court.

The decree in this case is not sufficient in form or substance, but in view of our opinion as to the insufficiency of the evidence to sustain any decree possible under the allegations of the bill, we will proceed to a consideration of the evidence.

It appears from the record that the parties to this proceeding lived together as husband and wife for a period of about four months. The parties were married at Fort Saskatchawan, Northwest Territory. The record does not show whether complainant had resided in the State of Illinois for a period of one year just prior to the filing of his bill herein, but does show that he was living in Chicago in March, 1898, and until August 20, 1898. The evidence as to all essentials of jurisdiction should have been preserved in the certificate of evidence or by findings of fact in the decree. Lawrence v. Lawrence, 181 Ill. 248; Davis Paint Co. v. Metzger Oil Co., 188 Ill. 295; Way v. Way, 64 Ill. 406.

It appears that she was about twenty-one years of age and weighed about 125 pounds, and that her husband had been married and divorced from his first wife, who was still living.

The evidence as to the acts of cruelty is brief.

It appears from the abstract that she refused to cohabit with him longer than about six weeks immediately after their marriage and the acts of cruelty are stated by the husband in the following language:

"We were playing cards. I had forgotten what was the last card and I said, 'Let me see, Gertrude.' She said she wouldn't, and put her hand on the card. I just stooped over like that and picked up the card and looked at it, and she struck me, and she was very angry. She struck me in the face. I, however, guarded the blow, ducked my head in, not thinking that she was angry. She continued playing under protest. She wanted to quit. On another occasion we were in the room previous to dinner; there was some argument we had in regard to the pronunciation of some word and she struck me twice in the stomach."

It appears to us that these incidents are entirely too trifling to occupy the attention of counsel or court. They were certainly too inconsequential at the time to arouse the fear of her husband that he was in danger of receiving bodily harm. She desired to leave the card table but her will was not supreme and she continued to play under protest. It is evident that she desired to leave her husband, and watched an opportunity to do so, after she had lived with him two or three weeks, but she was persuaded by him through various arguments to remain with him until January 29, 1901, when she finally abandoned him. She certainly had little affection for him. However, after a careful search of the evidence we do not find that her husband was at any time in danger or even fear that he would receive bodily injury from her.

The circumstances of each case go far to determine the meaning of the expression as used in the statute, "extreme and repeated cruelty." It does not always consist wholly in acts of physical violence. These are elements that must be found in every definition of the offense. In Farnham

v. Farnham, 73 Ill. 497, where two distinct acts of phys-
ical violence were inflicted upon the person of the wife, but
no great physical injury was done at either time, it was
said :

"The jury could very properly consider the abusive lan-
guage which the evidence showed he applied to her as char-
acterizing those acts of physical cruelty and as giving to
them a poignancy they would not otherwise have had."

In the case at bar there is not the slightest intimation
that the slight acts of violence on her part toward her hus-
band were accompanied by any mental suffering on his
part, not even such humiliation as would induce him to
retire from the card table.   Acts of violence on the part of
the wife, the weaker party, ordinarily have not the same
evidentiary weight as when inflicted by the husband, the
natural protector and generally the stronger party.   The
cases cited by counsel for appellee were brought by the
wife against the husband for extreme and repeated cruelty.

It is now a settled rule in this state that where the hus-
band asks for a divorce from his wife upon the ground of
extreme and repeated cruelty he must make out a clear
case; and "it is not sufficient for him to show slight acts
of violence on her part toward him, so long as there is no
reason to suppose that he can not protect himself by a
proper exercise of his marital rights."   De La Hay v. De
La Hay, 21 Ill. 252.

This doctrine was approved in the case of Duberstein v.
Duberstein, 171 Ill. 133, where it appeared that the wife
was guilty of throwing a chair upon her husband, inflicting
a serious injury upon his side; at another time drawing a
knife on him; at another throwing an iron stove cover upon
him, hitting his head and inflicting serious injury; at still
another time striking him with an ornament stone, throw-
ing chairs and cuspidors at him, inflicting two wounds on
his head, so that he was under the care of a physician and
compelled to undergo an operation.   But all these acts
were held to have been condoned, and as compared with
them or with the acts of violence on the part of the wife
in any case where divorce has been granted to the husband

on account of extreme and repeated cruelty, the acts complained of by defendant in error are insignificant and of the most trifling character.  The refusal by plaintiff in error to cohabit with her husband is not made ground for divorce by the Illinois statute.  Fritz v. Fritz, 138 Ill. 436.

It is to be observed that Mrs. Severns did not introduce evidence to sustain the allegations of her cross-bill or to rebut the appellee's testimony.  She wrote a letter at the time of her final abandonment of the appellee to her husband wherein she stated, "I have left you forever.  You are putting up with my indifference simply because you know I couldn't stand it forever, and would in time go of my own free will; this being the case you can get a separation with not another thing, if you let me go as I have begged you to.  I know you have no love left for me; I can't expect it, nor want it.  This letter ends us for now and ever on this earth, and yet forever, because in Heaven but one wife is considered lawful and that one will not be Gertrude."  She further writes to a friend after separation, "I did act in an underhanded way, but could do no other.  All I can say is I am glad it is all over and I am with my folks once more. I will never write him nor see him again.  Dr. Severns has been very good to me in a good many ways.  Still I am not happy and it is useless in making him the same.  He is as good as any man could be to me."  Notwithstanding the evident merits of the controversy between the parties to this case, we can not for the reasons stated affirm the decree.  The decree of the Circuit Court is reversed and the case remanded with directions to grant leave to amend the bill if defendant in error desires.