Mandate recalled and decree modified, February 17, 1914.

# CARTWRIGHT v. MOFFETT.

### (136 Pac. 881; 138 Pac. 1076.)

**Trusts—Nature of Instrument.**

1. In a suit to cancel a deed to plaintiff's son on the ground of
fraud in misrepresenting its legal effect, the fact that the parties
characterized the instrument as a trust deed, when in fact it declared
no trust, is not controlling; the effect of the deed being to intrust the
property to the son.

**Deeds—Validity—Sufficiency of Evidence.**

2. In a suit to cancel a deed on the ground of fraud, the weight of
evidence *held* to sustain the validity of the deed.

**Attorney and Client—Authority of Attorney—Control of Suit.**

3. Where plaintiff, in a suit to set aside a deed to her son, stated
that a decree giving the son the legal title, one half in his own right
and one half in trust for his brother, all subject to a life estate in
her own favor, would be satisfactory to her, the entry of a decree
to that effect was not an infringement of the authority of her
attorney.

> [As to the extent to which client may exercise control of cause,
> see note in 93 Am. St. Rep. 169.]

**Appeal and Error—Harmless Error—Error Favorable to Appellant.**

4. Any error in a suit to cancel a deed to plaintiff's son in ingraft-
ing on the deed a trust.to which the parties had agreed by parol was
favorable to plaintiff, and not ground for reversal on her appeal.

**Appeal and Error—Decree—Modification.**

5. In a suit to set aside a deed to plaintiff's son, where the de-
fendant tenders a declaration of trust, giving to his brother an equal
interest in the property with himself, all subject to a life interest
in plaintiff, and plaintiff in her testimony states that this would be
satisfactory to her, a decree omitting the provisions thus agreed upon
will be modified to include them.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is a suit by Charlotte Moffett Cartwright
against James Peter Moffett and Charles K. Henry,
to set aside a deed made by the plaintiff mother to her
son, the defendant James P. Moffett, on the ground
of fraud on his part in concealing from her the true
legal effect of the document, and in stating to her that

it was an instrument connected with a will prepared for her by her confidential attorney, which instrument the latter desired her to sign.

The defendant traverses all the allegations of the complaint which impute to him any misconduct or fraud, and alleges affirmatively, in substance, that the plaintiff signed the deed knowingly and understandingly; that the matter had been discussed fully between the plaintiff and her son, the defendant Moffett, and, further answering, alleges that in pursuance of a written authority given to him by the plaintiff on February 7, 1910, empowering him to lease part of the property in contention for a period of 90 years, at not less than certain rates prescribed therein, he had entered into a preliminary contract with the defendant Henry, and had received $1,000 earnest-money from him to lease the property for 90 years at more advantageous terms than the minimum limited in his authority. The defendant Henry answered, in substance, that in pursuance of the authority given by plaintiff to the defendant Moffett, her son, he had entered into the preliminary agreement mentioned, without any notice whatever of the alleged infirmity of the deed from the plaintiff; had paid $1,000 as earnest-money, which had never been returned to him; had submitted to the plaintiff a lease embodying the terms of the preliminary agreement in detail; and that neither his earnest-money nor the lease had been returned to him, nor had the plaintiff made any objections to the terms of the proffered lease. He prayed that the plaintiff be compelled to specifically perform the agreement to lease the premises.

The new matter in both answers was traversed by the reply. The Circuit Court, after hearing the parties at length rendered a decree upholding the deed attacked by the complaint, requiring the plaintiff to

69 Or.—24

specifically perform the agreement to make a lease for 90 years to the defendant Henry, and declaring that the defendant Moffett holds the legal title to the property in dispute, one half in his own right in fee simple, and the other half in trust for his brother, another son of the plaintiff, all subject to the life estate of the plaintiff therein.    The plaintiff appeals.

AFFIRMED: MANDATE RECALLED AND DECREE MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Martin L. Pipes.*

For respondent Moffett there was a brief, with oral arguments by *Mr. A. E. Clark* and *Mr. John F. Logan.*

For respondent Henry there was a brief over the name of *Messrs. Bauer & Greene,* with an oral argument by *Mr. Thomas G. Greene.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The deed in question was executed December 22, 1909.    It purports to convey to the defendant Moffett sundry tracts of land in and about the City of Portland, of the probable value of $150,000, reserving to the plaintiff a life estate therein, subject to a mortgage of $7,500.    The plaintiff has resided in that vicinity since early childhood with the exception of about seven years spent in eastern Oregon.    She says that she was born December 21, 1842, and consequently was 67 years of age the day before the execution of the deed.    Her only living children are James Peter Moffett, defendant, aged 50 years at the hearing of the case, and William H. Moffett, about 10 years younger.    Owing to a prenatal accident, the latter was weak both in body and in mind, and had always been an object of particular care and solicitude on the part of his mother.    The

defendant was married in 1885. Up to that time he
had lived with his mother, and was engaged in busi-
ness for himself, and at the time of the hearing was
occupying a responsible position with the Board of
Fire Underwriters in the City of Portland. It is ad-
mitted that up to the time of the execution of the deed
the mother and son were on terms of intimacy and
affection, and that the mother had great confidence in
the son. These are the principal characters in the
events culminating in this litigation.

The property in question consisted in part of 100
feet square at the corner of Seventh and Salmon
Streets in the City of Portland, occupied by the plain-
tiff as a residence, and which otherwise produced no
revenue or benefit to her. She also had in the south-
ern part of the city some wild land acreage of about
70 acres, descending to her from her father's estate.
In other parts of the city she had some buildings
leased, but the total income from all the property from
all sources amounted to only about $150 per month.
The taxes and various municipal improvements con-
stituted charges upon the property far in excess of the
revenue derived therefrom. The matter of leasing the
property for a long term had been under discussion
in the family for many months. The defendant son
had been active in keeping down assessments and in
otherwise looking after the property in general, al-
though he did not collect any of the rents for his
mother. The plaintiff is characterized by several wit-
nesses as notional, and the testimony and history of
the case justify the appellation. She was naturally
very much attached to her home, where she had resided
for almost half a century. The question of the dis-
position of her property was frequently discussed be-
tween herself and her defendant son. By turns she
talked of making her will and making a deed. She

consulted her confidential adviser, an attorney, about making a will, and under her direction he drew up a testamentary document by which she devised to the defendant son an undivided half of her property absolutely, and provided that the remaining moiety of her holdings should be managed and expended by a trustee for the benefit of her other son during his life, with remainder in fee to the defendant. The latter was present at her home when the attorney came to take her execution of the will, and some discussion arose about it. Her then counsel, testifying, says that the defendant opposed the execution of the will in the form mentioned, contending that his mother wanted a deed drawn. It appears that the discussion grew somewhat heated between the three, and finally the attorney withdrew, leaving the will with the plaintiff. The defendant testifies that the suggestion of a deed on that occasion came from his mother, and that after the attorney had departed, his mother requested him to have a deed drawn up, conveying to him the property in the form described in the deed, which she afterward executed; that he complied with her request and presented the deed for her signature, but she said she was not ready to execute it. On the following day she and her son, the defendant, traveled together to Seaside, in Clatsop County, where she had a cottage. She remained there several days, but he returned to Portland the next day. After her return to the City of Portland, she executed the will on the 18th of December, 1909. On the 20th she executed a deed, conveying to the City of Portland a part of the acreage already mentioned, to be used as a boulevard through the property. On the 22d she executed the deed in question to set aside which this suit is instituted.

1. She is described by the attorney who drew the will as a person well qualified to manage her own

affairs, and capable of executing the will. The plaintiff says that her son on various occasions had come to her home and cursed and swore at her and called her many vile names, which were resented by his brother, and demanded that she execute the deed in question. Although there were other parties present in the house at the time of these visits, they do not corroborate the plaintiff as to the language imputed to the son, although they testify for her to the extent that he insisted upon the deed. The allegation of her complaint is, in substance, that the son represented to her that the deed was an instrument which her attorney desired her to sign in connection with the will, but the testimony utterly fails to support that allegation. The deed was executed in the presence of two well-known citizens of Portland in no wise interested in the subject matter. One of them, the notary who took the acknowledgment, testifies that he had taken the acknowledgment of the boulevard deed two days before, and that when he came to take the acknowledgment of the deed in question, he carefully read it to the plaintiff, and, the question of the boulevard deed having come up, an exception was interlined in the deed excluding the boulevard from the effect of the latter deed. Special comment was made, and a discussion had about her reservation of a life estate, so that no reasonable question can remain but that the deed was read to her and explained with greater detail than ordinarily observed on such occasions. It is true that it was spoken of at the time as being a trust deed. From a strictly legal point of view, this is an inapt expression, for on the face of the deed no trust is declared. Contemporaneously with the execution of the deed, before the same witnesses the son executed an instrument reciting the conveyance, reservation of the life estate, the relationship of the mother and two sons, and the desire to

provide for the maintenance of the brother, and agree-
ing that from and after the death of the mother, the
defendant would pay toward the support of the brother
the sum of $75 per month during the life of the latter,
the payment to be made to James B. Cartwright, as
trustee for the brother. The circumstance that the
parties called it a trust deed is not necessarily control-
ling. In fact, the mother did intrust all her property
to her son. She had the right to do this if she under-
stood what she intended. The son testifies that these
matters had been frequently discussed between him
and his mother, and that she desired him to take
charge of the property and manage it so as to get a
greater income from it, with the ultimate design that
the revenue after her death should be divided equally
between him and his brother; that she had talked about
having an instrument prepared, leaving a pension of
$50 per month for the brother, and some years prior
thereto had actually had such an instrument drawn up,
but had not signed the same. It appears in evidence
that in conversation with the brother of her first hus-
band she had suggested $50 a month for the support
of the defective son, but that the brother in law had
finally prevailed upon her to make it $75. The defend-
ant testifies that all these things were discussed be-
tween him and his mother, and that it was understood
between them that, although the whole estate was con-
veyed to him, subject to his mother's life estate, yet
the understanding was that, while he collected one half
of the revenue, he was not to enjoy any of the same,
but was to apply it to the expenses of the estate, and
the other part he was to give directly to his mother.
None of this is denied by the plaintiff in rebuttal. Al-
most immediately after the execution of the deed other
parties began to ply the plaintiff with suggestions that
the defendant son had succeeded in getting the whole

title to all her property and could turn her out of doors, leaving not a cent for herself or the other son. No mention seems to have been made to her of her reservation of the life estate, but particular stress was laid on the fact that she had given a warranty deed.

It appears that she employed counsel during the month of January, 1910, with a view of instituting a suit of the kind now under consideration; yet as late as February 7, 1910, plaintiff executed the authority to her defendant son to lease the residence property for the period of 90 years. This writing was executed in duplicate in the presence of a disinterested witness, to whom the plaintiff committed the custody of her copy of the same. After reciting the minimum rent to be reserved, that instrument contains the following provision: "And the revenue received shall be divided monthly, share and share alike between us so long as Charlotte Moffett Cartwright shall live. And after her death the one half of the monthly revenue received shall be paid to the legal representative of William Henry Moffett, so long as the said William Henry Moffett shall live." The brother was very much opposed to this agreement and at the time of its execution seized one copy of it and attempted to destroy it; but, according to the testimony of the witness, the mother rebuked him, made him leave the room, and locked the door to prevent his return.

As an indication of the mental caliber of the brother, it may be here noted that he expressed but two objections to the instrument last referred to; one was that the defendant had signed the same above the name of the mother, and the other was that the lease, after it was negotiated by the defendant, recited a rental in excess of the minimum expressed by the agreement between the mother and son. The least amounts prescribed by the authority to lease were $200 per month

for the first year, $300 per month for the second year, $400 per month for the third year and the remainder of the term. In the agreement with Henry the corresponding amounts were fixed at $250, $350, and $500, and, besides this, the lessee was required to pay all taxes and assessments against the property. Armed with this authority the defendant son negotiated with the defendant Henry concerning a lease on the residence property, and a preliminary agreement was drawn up reciting the receipt from the defendant Henry of the sum of $1,000, as earnest-money, the reservation of the rent at the advanced rate, the permission to the plaintiff to remain in possession of the residence until June 1, 1910, or until such time as the lessee should commence actual construction, reserving to her all the mantels, furnace, contents of the house, and shrubbery in the yard, agreeing to erect a "Class A" building at a cost of not less than $50,000, and prescribing generally that the lease should be in the usual form of long-time leases customarily made in the City of Portland. Having collected the earnest-money, the· defendant took it to his mother, informing her that he had leased the residence property. She says that she refused to receive it, and it appears in evidence that she afterward wrote to the bank, where the son had deposited one half of it to her account, that she declined to receive the deposit. The son says that he offered her the one half of-the earnest-money, and she told him to deposit it to her account. They differed diametrically on that point. Later on, the defendant Henry tendered a lease, apparently in the usual form of such leases, executed by himself, and sent it to the plaintiff for her signature. She has not made any objection to the terms of the lease, and has not returned it. The $1,000 has not been returned to him.

2. The sum and substance of the testimony is that the plaintiff desired to arrange her property so that

after her death the two sons would enjoy the same, and the issues thereof, share and share alike, the defendant in his own right, and the other son through a trustee, with the remainder to the defendant son. The defendant agrees that that was the understanding, and the only difference between the parties is as to the manner in which the result was to be accomplished.

3. A careful reading of every line of more than 900 pages of typewritten testimony, besides the exhibits, convinces us that the weight of the testimony is in favor of the validity of the deed. The plaintiff, while on the stand, expressed her satisfaction with the lease a number of times. In answer to queries by the court, she stated that a decree embodying what both say was the ultimate intention of the parties would be satisfactory to her. The court accordingly made a decree as hereinbefore mentioned. Counsel for the plaintiff here contend that this was an infringement of his authority as attorney for his client, and that the court had no right to make such disposition of the case without the consent of counsel. The principal case relied upon by the plaintiff in support of that theory is *Bonnifield* v. *Thorp* (D. C.), 71 Fed. 924. In that case, after time for answering had expired, and counsel for plaintiff had refused to grant leave to file an answer, the defendant secured a stipulation from the plaintiff himself extending the time. Afterward, on motion of the plaintiff by counsel, the court struck out the stipulation and refused to take off the default. In deciding the case, the court used this language: "The court has no doubt whatever that this stipulation must be disregarded. The line of demarcation between the respective rights and powers of an attorney and client is clearly defined. The cause of action, the claim or demand sued upon, the subject matter of the litigation, are within the exclusive control of the client; and the attorney may not impair, compromise, settle, surren-

der or destroy them without the client's consent (citing numerous authorities). But all the proceedings in court to enforce the remedy, to bring the claim, demand, cause of action, or subject matter of the suit to hearing, trial, determination, judgment, and execution, are within the exclusive control of the attorney. 'All acts, in and out of court, necessary or incidental to the prosecution or management of the suit, and which affect the remedy only, and not the cause of action,' are to be performed by the attorney.'' The action of the court comes within the first clause of the excerpt here quoted and is on the side of the line within the domain of the client. The logical result of the position contended for by plaintiff's counsel would be that no court could make a decree without the consent of the counsel on both sides.

4. It may be, indeed, that the court technically erred in ingrafting upon the deed the conditions of the trust which had been agreed upon between the parties by parol, for it was within the scope of the pleadings and evidence to have dismissed the complaint. But the error, if any, is favorable to the plaintiff, and binds the other party because he has not appealed. The decree substantially declares the rights of the parties as the plaintiff has always contended that they should be, and to which the defendant has always consented, so far as the testimony shows. In good conscience the decree amounts to further assurances and declarations of the terms of the trust which was in fact reposed by the mother in her son. There is no evidence that he has ever attempted to repudiate this trust, however inartificially declared by the mere words of the parties. It would be sacrificing substance to form for us to decline to uphold the decree of the court. The judge who heard the testimony, saw the parties, and their manner upon the stand is better qualified to judge of the ulti-

mate facts of the case than we who are confined to a mere perusal of papers.

The decree of the court below is affirmed, and the cause remanded for such further proceedings as may be necessary in closing up the transaction of leasing, and other matters connected with the suit, the details of which can be better left to the supervision of the Circuit Court.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

———

Decided February 17, 1914.

ON PETITION TO RECALL MANDATE.

(138 Pac. 1076.)

MR. JUSTICE MOORE delivered the opinion of the court.

5. This is a motion to recall a mandate so as to make it correspond with the terms of a decree tendered by the defendant Jonas P. Moffett. His answer contains a clause as follows:

"This defendant has offered and tendered to execute a declaration of trust in favor of William Moffett, giving to him an equal interest in the property with this defendant, and has offered and tendered to execute all necessary documents to that end, to give and insure to the plaintiff entire income from all of the property during her lifetime, and, if desired, to convey said property to some suitable trustee, either an individual or a trust company, upon such terms as would give to the plaintiff the entire income, use and benefit of the property during her lifetime, in other words, to give her a full life estate therein, and subject to such use and life estate, the property to be divided and enjoyed by this defendant and William Moffett, share and share alike, and now offers and tenders the foregoing, and to do all acts and to execute all papers

necessary to carry the same into effect, or, if deemed proper and advisable by the court, this defendant now consents and suggests that the deed described in the complaint be so reformed and changed in its terms by decree of this court, and the arrangement under date of February 7, 1910, be so changed and modified by the decree of this court, as to carry into effect the foregoing offers and tenders upon the part of this defendant.''

At the trial the judge inquired of the plaintiff: ''If the court would make an order directing that this property be put in trust for you during your life, all of it, and upon your death to go to your children, share and share alike, would that be satisfactory?'' To this question, she replied: ''Yes; that is all right.''

The decree given by the trial court did not contain the provisions thus offered and accepted. It did not divide the property involved between the defendant Moffett and his brother, share and share alike, or at all. The error in this respect, however, was not sufficiently called to the attention of this court when the cause was heard on appeal.

The mandate sent down will be recalled, and when received it will be corrected and returned to the lower court, with directions to enter a decree in accordance with the original mandate, but modified so as to conform to the offer made in the defendant's pleading and the acceptance thereof as evidenced by the plaintiff's testimony hereinbefore quoted.

MANDATE RECALLED AND DECREE MODIFIED.