## SCHOREN v. SCHOREN.

(214 Pac. 885; 222 Pac. 1096.)

**Appeal and Error—Trial Anew on Appeal from Whole Decree.**

1. Under Section 556, Or. L., the appeal being from the whole of the decree, suit is to be tried anew on the transcript and evidence accompanying it.

**Divorce—"Desertion" Established by Refusal of Intercourse.**

2. Desertion is established by refusal of intercourse.

**Divorce—Desertion for Full Year Necessary.**

3. Divorce decree for desertion is unauthorized under Section 507, subdivision 5, Or. L., a full year from the commencement of the desertion not having elapsed prior to filing of suit or entry of decree.

---

2. Refusal of marital intercourse as grounds for divorce, see notes in 12 Ann. Cas. 547; L. R. A. 1915B, 770.

**Divorce—Refusal of Intercourse not "Cruelty"—"Personal In-dignities."**

4. Refusal of intercourse is not within Section 507, subdivision 6, Or. L., giving as ground of divorce cruel and inhuman treatment or personal indignities rendering life burdensome.

**Divorce—Partitioning Real Estate must be Based on Issues in Pleadings.**

5. A divorce decree partitioning and determining title to real estate must be based on and in conformity with issues raised by the pleadings and facts alleged, and supported by the findings.

**Divorce—Husband and Wife—Decree Partitioning Real Estate Un-authorized by Pleadings.**

6. Neither the wife in her complaint for support under Sections 9749–9752, Or. L., nor the husband in his answer or counterclaim for divorce, describing or seeking relief concerning the real estate partitioned by the decree, but the answer and counterclaim merely alleging defendant's ownership and maintenance of a home, at a certain number on a certain street, which the wife left, the de-cree so far as attempting to transfer title to real estate is invalid.

**Divorce—On Reversal Wife Decreed Lien Till Repaid Sums Paid on Mortgage.**

7. On reversal of decree of divorce partitioning real estate, the wife, who, relying on stipulation, took possession of the real estate and made payments on mortgage thereon in accordance with under-standing with husband, is entitled to repayment, and will be awarded a lien till paid.

## ON REHEARING.

**Appeal and Error—One Requesting Decree cannot Appeal Therefrom.**

8. One on whose request a judgment or decree is entered, grant-ing him the relief designated in his request, cannot appeal from the judgment or decree granting such relief.

**Divorce—Husband Could not Appeal from Decree Awarding Him Divorce as Prayed for.**

9. Defendant, who obtained a divorce on his counterclaim in a suit by his wife for support, could not appeal from that part of the decree awarding him divorce; no fraud appearing.

**Appeal and Error—Judgment—Decree Rendered on Oral Stipulations is Consent Decree, and not Appealable.**

10. Decree rendered on an oral stipulation of the parties, made during the course of the proceedings and entered in the court

8. Direct attack on divorce decree by party obtaining it or consenting thereto, see notes in 60 L. R. A. 294; 51 L. R. A. (N. S.) 534.

Collateral attack on divorce decree, see notes in Ann. Cas. 1915B, 430; 3 A. L. R. 540.

See 3 C. J., p. 671; 19 C. J., p. 188.

journal or embodied in the decree, is deemed one of consent, and is equivalent to a decree by confession, and, having consented thereto, the parties cannot appeal therefrom, under Section 549, Or. L.

**Divorce—Consent Decree, Awarding Division of Property, Though not Within Scope of Pleadings, Held not Appealable.**

11.  In a suit by the wife for support, in which the husband counterclaimed for divorce, a decree as to a division of the property rendered on the oral stipulations of the parties, dictated to court stenographer and made in open court, *held* a decree by consent, not appealable by the husband, independently of the question whether the pleadings sufficiently raised issues on which to base such a decree, if the matter had been contested.

**Divorce—Facts Held to Show Stipulation on Which Consent Decree was Based Expressed Final Agreement of Parties.**

12.  In a suit by the wife for support, in which the husband counterclaimed for divorce, facts *held* to show that an oral stipulation of the parties, dictated to the court stenographer and on which consent decree was based, was made in open court, as declared in the findings and as recited in the decree, and that it expressed the final completed agreement of the parties.

From Wasco: FRED W. WILSON, Judge.

Department 2.

This is an appeal from a decree annulling the marriage status of the parties hereto and determining their rights to certain real property.

Christena Schoren and Mathias Schoren have been twice married to each other. They were first married September 2, 1893, and, after living together for about nineteen years, were divorced. About three years thereafter they were remarried and, after five years, they again appear in court. Three children were born to them during their first marriage, two of whom had attained their majority and the youngest having reached the age of seventeen years prior to the institution of this litigation on October 15, 1920. On that date, Christena Schoren commenced a suit against Mathias Schoren, as defendant, by filing her petition in the Circuit Court of the State of Oregon for Wasco County, whereby

she undertook to secure relief through the court, in requiring defendant to support her and their minor daughter. Mathias Schoren answered, denying the alleged delinquencies charged against him by his wife's complaint, and asserted that he maintained a comfortable home in The Dalles, in which he and his family were residing; that the plaintiff, without fault on his part and without his consent, "left the defendant's bed and board and moved to rooms on the second floor of their home, taking the minor daughter with her, and since then has eaten and slept there, and has refused to consort with defendant and has abandoned the conjugal relation."

Defendant then counterclaims and avers:

"That the defendant owns and maintains at 302 East 2d Street, Dalles City, Oregon, a home of size, equipment and comfort in keeping with his financial worth * * ;

"That on or about May 1, 1920, the plaintiff, without cause or fault from or of the defendant, and without his consent or desire, left the defendant's bed and board and moved to rooms on the second floor of their home, taking the minor daughter, Geneva with her, and since that date and occurrence has continued to eat and sleep and live there, separate and apart from the defendant and their older daughter, Helen, and has refused to consort with defendant and has abandoned the conjugal relation.

" * * That the defendant is a blacksmith and operates a blacksmith and machine shop in The Dalles, and must necessarily be about his said business during working hours; that the plaintiff, since about May 1, 1920, has made no attempt, but has failed and neglected to do any housework in and about that portion of the home occupied by the defendant and daughter Helen, and thus the work of cooking meals and cleaning and caring for the home has fallen heavily upon the defendant and daughter Helen."

Schoren avers that he returned home one day in October, 1920, to find that his wife had taken from the kitchen all groceries and stocks of food, and that he was obliged to go out and purchase a new supply before he and his daughter Helen could cook their supper; that a few days afterwards, the same thing happened again. He further alleges that his wife had repeatedly stated that she would never live with him again. He avers that she was possessed of an ugly and nagging disposition; that, in fact, she practiced "nagging," as defendant believed, for the purpose of inducing him to leave home that she might acquire it. He further avers that she also accused him of the commission of adultery "with others not named." He says, in his pleading, that her charge of adultery is untrue.

On February 8, 1921, the case, being at issue, came on regularly for trial. The plaintiff, Christena Schoren, and Geneva Schoren, her daughter, gave testimony in behalf of the complaint for support. A recess was then taken, and the trial judge invited the attorneys for the respective parties into his chambers and suggested that the litigants adjust their financial differences and make a settlement of their property rights. This suggestion arose from the fact that the parties were engaged in making a public record that might prove embarrassing to their daughters.

Thereafter, a stipulation was entered into by and between Christena Schoren and Mathias Schoren, which is set forth in the findings of fact, and which forms the basis of the decree wherein certain real property was awarded to Christena Schoren. According to the findings of fact, the stipulation was dictated to the court reporter in open court and was thereafter

transcribed and filed. No further evidence was taken in behalf of, or against, the cause of suit set out in the complaint of Christena Schoren. The cause of suit alleged in the counterclaim of Mathias Schoren then came on for hearing. The testimony in support of his cause is brief. It consists of evidence of Mathias Schoren alone, who testified, in substance, that he was of the age of fifty-two years and the husband of Christena Schoren; that they were last married on August 21, 1915; that they were, at the time of the suit, husband and wife, residing at The Dalles, and had been inhabitants of Oregon continuously since March 3, 1888; that they lived in the same house, but did not cohabit as husband and wife and had not "since May, * * 1920."

"Q. And you have not cohabited with her since?
"A. No, sir.
"Q. Was that because of your desire, or her refusal?
"A. Her refusal.
"Q. Was there any cause for her refusing to cohabit with you?
"A. None to my knowledge.
"Q. So far as you know, there wasn't?
"A. Yes, sir.
"Q. Did you give her any cause for that?
"A. Not that I know of.
"Q. You live in the same house, but do not live as husband and wife?
"A. Yes, sir, that's right."

Upon that record the court granted Mathias Schoren a divorce. The decree provided that—

"The real estate mentioned and referred to in the pleadings in this cause and situated at No. 320 3d Street, Dalles City, Oregon, and described as Lot 5 in Block 6 in Bogelow's Bluff Addition to Dalles City, Oregon, be, and the same is hereby, partitioned

and divided between the parties hereto, and that the plaintiff have the East half of said property, and the defendant the West half thereof, and that the plaintiff execute and deliver to the defendant a quit-claim deed for the West half of said real estate and that the defendant execute and deliver to the plaintiff and Geneva Schoren, daughter of plaintiff and defendant, a quit-claim deed for the East half of said property * * .

"That in the event of the failure of either party to execute and deliver a deed to the other party in accordance with the provisions of this decree, then and in that event this decree shall be deemed and taken to be equivalent thereto and may be recorded in accordance with the provisions of Section 9895, Or. L., 1920 * * .

This decree is given, made and entered on the 22d day of April, 1921, as of, on, and for the 9th day of February, 1921."

Prior to the settling and signing of the findings of fact, conclusions of law and decree in this cause, Mathias Schoren appeared by his counsel and moved—

"That the decision of this court, announced on April 18, 1921, * * sustaining the motion of the plaintiff for the approval and signing of certain findings of fact, conclusions of law and decree * * be reversed * * , and that a rehearing on said * * motion be granted," which motion was overruled.

Whereupon, the defendant asked leave to submit and offer proof, which request was denied.

The appellant says the court erred in decreeing that specific real property belonging to Mathias Schoren should be conveyed to Christena Schoren, "because real property * * had not been mentioned or described in the pleadings, nor in the purported stipulation, nor admitted in, nor proved by, the evi-

dence,'' and ''in ordering, over defendant's objections, the alleged written stipulation to become a part of the record of the trial, and in overruling the defendant's motion to strike the same from the record * * .'' Error is further assigned upon the ground that the court refused ''defendant's application to introduce evidence to establish that the alleged stipulation was never agreed upon, nor entered into, nor executed.''    REVERSED AND REMANDED.

For appellant there was a brief and oral argument by *Mr. George R. Wilbur.*

For respondent there was a brief over the name of *Messrs. Wilson & Bradshaw,* with an oral argument by *Mr. W. H. Wilson.*

BROWN, J.—1. The appeal in this case having been taken from the whole of the decree, we are required to try this suit anew, ''upon the transcript and evidence accompanying it.''    Or. L., § 556.    Also see Or. L., § 405.    Hence, a number of matters discussed in the appellant's brief may not be referred to in this opinion.

Entering upon the trial of this cause *de novo,* we are confronted with the question as to the sufficiency of the proof to warrant the court in granting a divorce.

2. In this state, a divorce may be granted for a number of causes:

''5. Willful desertion for the period of one year;
''6. Cruel and inhuman treatment or personal indignities rendering life burdensome.''    Or. L., § 507.

From the allegations contained in the counterclaim, facts are averred that tend to show desertion.

Likewise, other acts are alleged to have been committed by the wife that point to cruelty. However, the evidence offered in the trial of the cause supports the charge of desertion only.

In this jurisdiction, it has been held by judicial decision that desertion is established by proof that the defendant has refused to have marital intercourse with the plaintiff: *Sisemore* v. *Sisemore,* 17 Or. 542 (21 Pac. 820); *Baker* v. *Baker,* 99 Or. 213 (195 Pac. 347).

There is a division in the decisions upon this question in other jurisdictions. Under what is perhaps the majority thereof, the refusal of intercourse by one of the parties to a marriage contract does not constitute desertion.

This court has followed the doctrine enunciated by Bishop, where that author wrote:

"Nothing injurious to the health can be required of either party in marriage. But if, from no consideration of health, and from no other good reason, either the husband or the wife permanently, totally, and irrevocably puts an end to what is lawful in marriage and unlawful in every other relation,—to what distinguishes marriage from every other relation,—this, by the better opinion, constitutes matrimonial desertion, though the deserting party consents still to live in the same house with the other, in the capacity of servant, of master, of brother, of sister, of parent, of child, or a friend, either for pay or as a gratuity." 1 Bishop, Marriage, Divorce and Separation, § 1676.

3. We concede, for the purpose of this case, that the evidence constitutes desertion. But, even so, Mathias Schoren is not entitled to a decree annulling the marriage status in this proceeding on the ground sought to be established by the evidence, because the statute requires allegation and proof of willful deser-

tion for the period of one year. It appears from his complaint and from his testimony that the desertion commenced on May 1, 1920, and the decree of divorce was made and entered on the twenty-second day of April, 1921, "as of, on, and for the ninth day of February, 1921." A full year had not expired prior to the time of the filing of the suit or the entry of the decree.

4. Plaintiff does not claim that the acts testified to constitute cruel and inhuman treatment, and, by the weight of authority, the refusal of one of the parties to a marriage contract to cohabit with the other is not legal cruelty. It has often been held that desertion does not constitute cruelty: *Smith* v. *Smith,* 62 Cal. 466; *Ruby* v. *Ruby,* 29 Ind. 174; *Stewart* v. *Stewart,* 78 Me. 548 (7 Atl. 473, 57 Am. Rep. 822); *Southwick* v. *Southwick,* 97 Mass. 327 (93 Am. Dec. 95). Plaintiff's testimony tended to prove desertion, and nothing more.

"The general rule is that in the absence of proof that the health of the complaining spouse is either injured or threatened, the refusal of the other to cohabit is not legal cruelty." 19 C. J. 56.

In *Pinnebad* v. *Pinnebad,* 134 Ga. 496 (68 S. E. 73), it was held that a wife's refusal to have sexual intercourse with her husband is not legal cruelty and is not a ground for divorce. See, also, *Platt* v. *Platt,* 38 Pa. Super. Ct. 551.

However, there are cases to the contrary. See *Campbell* v. *Campbell,* 149 Mich. 147 (112 N. W. 481, 119 Am. St. Rep. 660), wherein the court held that a wife's refusal to have sexual intercourse with her husband for a period of three years constitutes such extreme cruelty as warrants the granting of a divorce. This opinion is based upon former Michigan

cases: *Menzer* v. *Menzer,* 83 Mich. 319 (47 N. W. 219, 21 Am. St. Rep. 605); *Whitaker* v. *Whitaker,* 111 Mich. 202 (69 N. W. 1151).

In the case of *Severns* v. *Severns,* 107 Ill. App. 141, it was held that the refusal upon the part of the wife to cohabit with her husband except for a period of about six weeks after their marriage did not constitute extreme and repeated cruelty. See, also, *Hexamer* v. *Hexamer,* 42 Pa. Super. Ct. 226.

In *Schoessow* v. *Schoessow,* 83 Wis. 553 (53 N. W. 856), the court held that the refusal of a husband to have intercourse with his wife did not constitute "cruel and inhuman treatment," particularly in the absence of any testimony tending to show mental or bodily injury resulting to the wife from the husband's refusal. See *Varner* v. *Varner,* 35 Tex. Civ. App. 381 (80 S. W. 386).

A wife's refusal of sexual intercourse does not constitute cruelty which will justify granting him a divorce: *Holyoke* v. *Holyoke,* 3 New Eng. Rep. 169, 78 Me. 404 (6 Atl. 827); *Cowles* v. *Cowles,* 112 Mass. 298; *Gordon* v. *Gordon,* 48 Pa. 226; *Eshbach* v. *Eshbach,* 23 Pa. 343.

Giving to the terms, "cruel," "inhuman," and "personal indignities," their true significance, as used in the statute cited above, we adopt the following as expressing our views:

"In what respect the refusal by the wife to allow the husband access to her bed can be termed cruel * * I cannot conceive; nor, having a reference to the proper meaning of terms, can I see how such treatment will render his life burdensome * * ." *McGill* v. *McGill,* 3 Pittsb. R. (Pa.) 25.

5. A decree, granting a divorce, and partitioning and directing title to real property, must be based

upon and in conformity with issues raised by the
pleadings: 19 C. J. 161; *Bender* v. *Bender,* 14 Or. 353
(12 Pac. 713); *Weber* v. *Weber,* 16 Or. 163 (17 Pac.
866); *Senkler* v. *Berry,* 52 Or. 212 (96 Pac. 1070);
*Sutton* v. *Sutton,* 78 Or. 9 (150 Pac. 1025, 152 Pac.
271).

" 'The maxim that the decree must be *secundum
allegata,* as well as *secundum probata,*' says Chief
Justice MARSHALL, in *Schooner Hoppett* v. *The United
States,* 7 Cranch, 389 (3 L. Ed. 389), 'is essential to
the due administration of justice in all courts.' * *
This rule requires that a party must obtain his decree
on the grounds stated in his pleading. * * " *Bender*
v. *Bender, supra.*

Again, the decree must be based upon, and be in
accordance with, the facts alleged in the pleadings,
and should be supported by the findings of fact: 14
Cyc. 713.

In the case of *Senkler* v. *Berry, supra,* it was
said:

"It is now the settled law of this state, that in
divorce proceedings the title to real property author-
ized to be awarded to the successful party by Section
511, B. & C. Comp., is not transferred by force of the
statute, but by force of the decree; that to enable the
court to act judicially on the subject of property in
such cases, and to make a decree that shall have the
effect of divesting the title to real property out of one
of the parties to the suit and transferring it to an-
other, it must appear in the pleadings, not only that
such party from whom it is proposed that the title
shall be taken is the owner of the property, but also
of what the property consists; and that, as the decree
has the effect of transferring the title, it must be
one of the muniments of the title and should identify
the parcel or parcels intended to be transferred or
affected thereby with as great certainty as is required
in ordinary conveyances: *Bamford* v. *Bamford,* 4 Or.

30; *Wetmore* v. *Wetmore,* 5 Or. 469; *Hall* v. *Hall,* 9 Or. 452; *Ross* v. *Ross,* 21 Or. 9 (26 Pac. 1007).''

6. Neither party to this litigation describes the real property nor seeks relief by averment in any pleading on file herein, concerning the parcel of land partitioned by the decree. Christena Schoren does say, in her complaint for support, that—

"The parties and their daughters live together in Dalles City, Wasco County, Oregon, at No. 320 East Second Street, in said city."

Answering his wife's charge of nonsupport, Mathias Schoren says, in effect, that his wife left his home "that he owns and maintains at 320 East Second Street, Dalles City, Oregon." In his counterclaim for a divorce he again avers that he owns and maintains a home at 320 East Second Street, Dalles City, and that his wife, without cause, "left the defendant's bed and board and moved to rooms on the second floor of their home." The only purpose of the wife's suit was to obtain support under the provisions of the act of the legislative assembly of 1889, entitled, "An Act to provide for the support of maried women," and codified as Sections 9749–9752, inclusive, Or. L. Mathias Schoren's intention, in referring to their home, was to show that she had abandoned him and the home he had provided for her. Neither party intended to, nor did either, bring the parcel of real property described in the decree into the case for judicial determination by any pleading, as measured by the rule announced by the authorities hereinbefore quoted. The absence of necessary allegations to empower the court to decree a transfer of title is not supplied by the stipulation hereinbefore referred to, nor does the stipulation aid the description. It follows that the decree of the

court below is invalid in so far as it attempts to transfer the title to real property: *Perkins* v. *Perkins*, 72 Or. 302 (143 Pac. 995); *Gustin* v. *Gustin*, 79 Or. 387 (155 Pac. 370).

As hereinbefore stated, the decree granting the divorce is likewise invalid.

For the reason that a dismissal of this proceeding would leave the controversy unsettled, the cause is remanded to the Circuit Court for such further action as the parties deem fit, not inconsistent with this opinion.

7. It appearing that Christena Schoren, relying upon the stipulation on file herein, entered into possession of the property hereinbefore referred to and made payments on the mortgage lien in accordance with her understanding with Mathias Schoren, for that reason she is entitled to a repayment of all sums she has advanced, together with legal interest thereon, and she is awarded a lien on that real property and entitled to the possession thereof until such sum is repaid to her.

Neither party shall recover costs and disbursements in this court.    REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.

Affirmed on rehearing February 13, 1924.

## ON REHEARING.

(222 Pac. 1096.)

### AFFIRMED. COSTS TAXED.

For appellant there was a brief and oral argument by *Mr. George R. Wilbur*

For respondent there was a brief over the name of *Messrs. Wilson & Bradshaw,* with an oral argument by *Mr. W. H. Wilson.*

McCOURT, J.—A rehearing was granted in this case upon the petition of plaintiff, in which it was vigorously contended that defendant is precluded from successfully prosecuting this appeal by controlling rules of practice recognized and applied by all courts, which rules, it is asserted, were not considered in the former decision herein (*ante,* p. 272, 214 Pac. 885).

In the petition for rehearing, and upon reargument of the case, counsel for plaintiff pointed out that the provisions of the decree awarding a divorce to defendant, granted the specific relief prayed for by defendant, and to obtain which he submitted evidence that satisfied the trial court that he was entitled thereto; also that the decree recites in substance that the provisions thereof, determining the respective rights of plaintiff and defendant in and to the personal property and real estate described in the decree and partitioning the same between the parties, were expressly consented to by defendant, and incorporated in the decree pursuant to an oral stipulation entered into by the parties in open court.

Plaintiff insists that the above-mentioned recitals in the decree strictly conform to the actual facts as they transpired and as they are shown by the record.

Referring to the provisions and recitals of the decree above mentioned, plaintiff contends that defendant is estopped to assert that the decree is erroneous, because: (1) The part thereof awarding a divorce is favorable to him and was rendered by the court at his request, and (2) The portion of the decree relating to property was given and entered by the court with the express agreement and consent of defendant.

In support of defendant's asserted right of appeal herein, counsel for defendant claims that the agreement concerning property rights, evidenced by the stipulation relating thereto, was not a completed agreement and was not to become such an agreement until reduced to writing and signed by the parties, and that it was so understood between the parties at the time the same was dictated to the court reporter, and hence it is claimed by defendant that the Circuit Court erred in treating mere negotiations of the parties in their efforts to reach a settlement of their property rights, as a completed agreement, and incorporating the same in the decree. Counsel for defendant advances the further contention that the provisions of the decree relating to property are void, for the reason that they are outside the issues made by the pleadings.

In our former decision we held: (1) That the evidence submitted by defendant was insufficient to warrant the court in awarding him a decree of divorce against plaintiff, and (2) That the provisions of the decree partitioning real property between the parties

were unauthorized and invalid, for the reason that the pleadings did not describe with sufficient certainty the real property owned by defendant and presented no issues upon which to base a decree awarding to plaintiff part of said real property.

8. It is a firmly established rule that one upon whose demand and request a judgment or decree is entered, granting him the relief designated in his demand or request, cannot appeal from the judgment or decree granting such relief. The rule is stated in 4 C. J. 716 as follows:

"Where a party procures the rendition or entry of a judgment, decree, or order, or is responsible for error therein, he is estopped to assert, on appeal or error, that it is erroneous. One who asks and obtains relief cannot appeal from the decree granting it because the effect thereof differs from his anticipations."

In the case of *McMahan* v. *McMahan*, 142 Ind. 110 (40 N. E. 661), both plaintiff and defendant sought a divorce. The plaintiff wife was awarded a divorce and a certain sum as alimony. Defendant objected to the amount of alimony allowed by the court, and endeavored to prevail upon the court to reduce the amount thereof, but without success. Thereafter defendant moved the court to substitute a new finding and decree in place of the one already made. Defendant wrote out a substitute finding and decree which he desired the court to enter, and embodied the same in his written motion therefor. The court allowed his motion and caused the proposed finding and decree to be entered of record precisely as appellant desired that it should be done. Defendant appealed from that decree. The court, in affirming the decree of the lower court, said:

"The appellant is in no position to complain of the judgment entered on account of the facts found not being sufficient to warrant a divorce. * * A party who expressly asks that a designated ruling, finding or judgment be made or rendered, cannot avail himself of that ruling or action of the court, although it may be material and may be exhibited by the record. What a party expressly asks the court to do, when done, cannot be available as error, however erroneous such action may be without a violation of the plainest principles of the law. Elliott's App. Proced., §§ 626–630, and authorities there cited.

"One cannot urge error in the proceedings leading to a judgment entered by consent. *Weander* v. *Johnson,* 42 Neb. 117 (60 N. W. 353)."

The principle involved in the rule of practice under discussion has been applied and enforced by this court in a number of cases: *Wesco* v. *Kern,* 36 Or. 433, 436 (59 Pac. 548); *Woodburn* v. *Aplin,* 64 Or. 610, 620 (131 Pac. 516); *Cartwright* v. *Moffett,* 69 Or. 368, 373 (136 Pac. 881, 138 Pac. 1076); *Weygandt* v. *Bartle,* 88 Or. 310, 320 (171 Pac. 587).

*Cartwright* v. *Moffett, supra,* was a suit to set aside a deed made by plaintiff to her son, upon the ground that the son had fraudulently concealed from the grantor the full legal effect of the document. During the course of the trial, in answer to queries by the court, plaintiff stated that a decree sustaining the deed and declaring that defendant held the legal title to the property conveyed thereby, one half in his own right in fee simple and the other in trust for his brother, another son of plaintiff, all subject to the life estate of plaintiff, would be satisfactory to her. The court entered a decree in conformity to the consent of plaintiff thus given, from which plaintiff ap-

110 Or.—19

pealed. Affirming the decree, this court, speaking through Mr. Justice BURNETT, said:

"It may be, indeed, that the court technically erred in ingrafting upon the deed the conditions of the trust which had been agreed upon between the parties by parol, for it was within the scope of the pleadings and evidence to have dismissed the complaint. But the error, if any, is favorable to the plaintiff, and binds the other party because he has not appealed. * * It would be sacrificing substance to form for us to decline to uphold the decree of the court."

9. A summons and a copy of defendant's cross-complaint in the instant case were served upon the district attorney of Wasco County more than ten days prior to the hearing. Both plaintiff and defendant were represented at all stages of the proceedings by able counsel. Each aggressively contested the right asserted by them respectively. Accordingly, no question of collusion or improper acquiescence of the parties to the decree of divorce given by the court enters into the consideration of this case.

It is clearly apparent that the rule announced by the authorities above cited, applies to that portion of the decree appealed from, which awarded defendant a divorce, and prevents him from asserting on appeal that it is erroneous.

10. The decisions of this court clearly define the effect of a decree rendered upon an oral stipulation of the parties made during the course of the proceedings and entered in the court journal or embodied in the decree. Such a decree is deemed to be a consent decree. It is equivalent to a decree by confession, and the parties having consented thereto, are not entitled to appeal therefrom: Section 549, Or. L.;

*Rader* v. *Barr,* 22 Or. 496 (29 Pac. 889); *Schmidt* v. *Oregon Gold Mining Co.,* 28 Or. 9 (40 Pac. 406, 1014, 52 Am. St. Rep. 759); *Twitchell* v. *Risley,* 56 Or. 226 (107 Pac. 459); *Plinsky* v. *Nolan,* 65 Or. 402 (133 Pac. 71). The above rule prevails in all other jurisdictions, except perhaps in a few where it is qualified by the statutory requirement that all stipulations shall be in writing.

In *Twitchell* v. *Risley, supra,* Mr. Justice SLATER, speaking for the court, said:

"The purpose of an appeal is to bring up for review an erroneous action of the trial court; but the trial court performs no judicial act when an order, decree, or judgment is entered by consent. No appeal can be taken by either party from such decision, since the error, if any, is his own, and not the court's. 2 Pl. & Pr. 99."

The effect of a consent decree entered upon the oral stipulation of the parties, and which purports to dispose of matters in a case wherein the pleadings would not, if the matter were contested, authorize such a decree, was carefully considered in the case of *Schmidt* v. *Oregon Gold Mining Co., supra,* wherein the effect of a consent judgment or decree was clearly defined. In that case this court, following the decision in *Rader* v. *Barr, supra,* held that a judgment or decree rendered upon the oral stipulation of the parties in open court, constituted a consent judgment or decree and was equivalent to a judgment or decree given by confession, from which no appeal can be taken. Mr. Justice WOLVERTON, speaking for the court, said:

"As a general proposition all provisions of a decree outside of the issues raised by the pleadings are void, but this cannot be predicated of a consent decree. * *

"But a consent decree is not in a strict legal sense a 'judicial sentence.' 'It is,' says Mr. Gibson in his excellent treatise entitled Suits in Chancery, § 558, 'in the nature of a solemn contract, and is, in effect, an admission by the parties that the decree is a just determination of their rights upon the real facts of the case, had such been proved. As a result, such a decree is so binding as to be absolutely conclusive upon the consenting parties, and it can neither be amended or in any way varied without a like consent, nor can it be reheard, appealed from, or reviewed upon a writ of error. The only way in which it can be attacked, or impeached, is by an original bill alleging fraud in securing the consent.'

"Mr. Beach, in his Modern Equity Practice, § 792, says: 'Parties to a suit have the right to agree to anything they please in reference to the subject matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings.' * *

"A judgment or decree entered upon the pleadings or after contest must fall within the issues raised by the pleadings, but a consent decree will be valid and binding upon the parties if its provisions fall within the general scope of the case made by the pleadings. This distinction is clear and incisive, and, it will be seen by the foregoing authorities, is recognized both by the text-writers and the courts."

11. In the light of the doctrine announced by this court in the decision last cited, and so fully and clearly explained in the opinion in *Schmidt* v. *Oregon Gold Mining Co.*, *supra*, defendant is not entitled to appeal from the provisions of the decree relating to the division of the property between plaintiff and defendant, unless as claimed by defendant, notwithstanding the recitals of the decree, those provisions were not consented to by defendant. To determine whether defendant in fact consented to the property

settlement expressed in the findings and adjudicated by the decree, it is necessary to examine the record, which we now proceed to do.

12. In brief, the record discloses that when the cause came on for hearing, the testimony introduced by plaintiff in support of her complaint was of such a character, as to be humiliating to the daughters of the parties, and if allowed to become a matter of record, would in the future seriously embarrass them. In that situation the Judge of the Circuit Court urged the parties to agree upon a property settlement, and a recess was taken to allow the parties to effect the settlement suggested by the court.

The parties, acting upon the advice and suggestion of the circuit judge, immediately commenced negotiations for a settlement, and continued their efforts to reach a settlement until about noon of the following day. The negotiations were conducted in the court chambers by the attorneys for the respective parties. Plaintiff and defendant were so bitterly hostile to each other, that no progress could be made while both were present; but they remained in the courthouse, and were consulted from time to time by the attorneys representing them respectively. The circuit judge remained about the courtroom and his chambers all the time the efforts at settlement were in progress, and from time to time endeavored to, and did, promote the same by suggestions and advice. Finally an agreement was reached; the parties were called into the chambers of the court, and in the presence of the judge and the parties, the opposing attorneys together dictated to the court reporter a stipulation setting forth the agreement which had been reached, in the words following:

"IT IS HEREBY STIPULATED by and between the parties hereto that regardless of the decree of the Court in reference to a divorce, that the property rights of the parties hereto shall be and are hereby settled in the following manner, to wit:

"The real estate situated on Third Street in Dalles City, Oregon, shall be divided into east and west halves and the defendant shall have the west half of the property, together with all personal property, of every kind owned or used by him in connection with his blacksmith business.

"The plaintiff and Geneva Schoren are to have the east half of said property, but the defendant shall have the right to use the building on the rear of the lot and known as the 'Wagon Shop' as now situated as long as he remains in business, or until such time as the plaintiff and Geneva Schoren, or their successors in interest, shall sell the east half of said property, or until said building shall have been destroyed, excepting only such portion of said building at the east end thereof as may be designated by the Court, which portion shall be occupied and used by the plaintiff and Geneva Schoren, or their successors in interest, and providing, however, the defendant shall construct a partition across said building upon the line designated by the Court separating the portion which the defendant is to use from the portion that the plaintiff and Geneva Schoren is to use.

"The plaintiff and Geneva Schoren are to have all personal property in or about the building on the east half of said premises, excepting only the articles mentioned in the list hereto attached and made a part hereof.

"It is further understood and agreed that the defendant and Helen Schoren may live in the dwelling house until the first day of April, 1921, but shall vacate on or before that date, and that during the time that they remain in the house they shall not in any way interfere with the plaintiff or Geneva Schoren, or any of the personal property belonging to them, ex-

cepting in so far as it may be necessary for them to use some portion of said personal property in connection with their occupancy of the house in proper manner and in the manner that it has heretofore been set out.

"The plaintiff shall assume and pay the mortgage upon said real estate amounting at this time to $1580.00, together with the interest thereon from and after the 17th day of January, 1921, and the defendant is to assume and pay all other indebtedness.

"It is Further Agreed that each party shall execute and deliver to the other a quitclaim deed for the other's portion of the real estate.

"The plaintiff shall, within a reasonable time, and without delay, and at the time the deeds are exchanged, procure and deliver to the defendant, a release of his portion of the real estate from the mortgage above mentioned."

Immediately following the dictation to the court reporter of the foregoing stipulation, the parties went to the premises described therein, and made the division of personal property provided for in paragraph 4 of the stipulation, listing the property so divided.

It was understood by the judge, the parties and their respective attorneys that in case a property settlement was effected by the parties, defendant would be granted a divorce, providing the evidence which he intended to offer, when submitted, satisfied the court that he was entitled to a divorce; and that any decree given would adjust the property rights of the parties in conformity to the terms of the property settlement agreed upon by them.

When court convened after the noon recess, February 9, 1921, and following the division of personal property above mentioned, the attorneys for the

parties and the defendant were present in court. Plaintiff was absent. Defendant was thereupon called to the witness-stand and sworn as a witness; in response to interrogations propounded by his attorney, defendant gave testimony tending to prove the charges upon which he based his claim for a divorce from plaintiff.

At the conclusion of defendant's testimony, the court declared the same sufficient to entitle defendant to a decree of divorce, and thereupon assented to the offer of one of the attorneys for plaintiff to prepare a draft of the findings, conclusions and decree and submit the same to the judge and to the attorney for defendant.

Thereupon, in the presence of defendant and his attorney and the attorneys for plaintiff, and with their acquiescence and consent, the court directed the court reporter to tear up and destroy the stenographic notes of the evidence introduced by plaintiff at the commencement of the hearing.

Owing to the occupation of the attorneys with other matters, and to the fact that the attorney for defendant resided in Hood River, it was not ascertained that the attorneys could not agree upon the form of the findings and decree until about April 1, 1921.

In the meantime defendant refrained from making payment of overdue installments of principal and interest upon the mortgage described in the stipulation and canceled insurance policies upon the dwelling-house awarded to plaintiff by the agreement expressed in the stipulation and collected return premiums, to which he was entitled, on account of such cancellation. Plaintiff arranged to place a new mortgage upon the part of the property awarded to her by the

terms of the stipulation and for the release of the mortgage then upon the property, as she was required to do by the terms of the stipulation.

Upon April 18, 1921, the cause came before the court upon the application of plaintiff, in which he requested the court to sign findings and a decree, a draft of which had been prepared by the attorneys for plaintiff and submitted to the court and the attorney for defendant. Defendant resisted plaintiff's motion, and assigned as reasons for his objections: (1) That the stipulation above set out, which was embodied in the proposed findings and decree was not to be effective until reduced to writing, signed by the parties and filed in court; and (2) That the stipulation was not made in open court as declared in the proposed findings and recited in the decree, and hence had no binding force. It was not then, nor is it now, claimed that the stipulation failed to express the agreement as the same was understood by the parties at the time it was dictated.

The circuit judge, after carefully reviewing all the facts and incidents leading up to the dictation of the stipulation to the court reporter and the acts of the parties and their attorneys subsequent thereto, signed the findings and the decree as of February 9, 1921. The findings express the conclusions of the trial court as follows:

Finding No. IX. "That in open court prior to the taking of any testimony in reference to divorce, the parties made and entered into an oral stipulation and agreement settling property rights, which stipulation and agreement * * is as follows: (Stipulation set forth in full)."

The conclusion of the court expressed in the above finding was repeated in the decree in the following words:

"This cause having come on regularly for hearing upon the trial thereof in open Court on the 8th and 9th days of February, 1921, and the Court having heard the testimony in said cause and having on said date approved the stipulation and agreement of the parties in reference to settlement of their property rights made in open Court in the chambers of the Court, * * and the court being now fully advised, etc."

There was nothing in the language of the stipulation nor in the conduct of the parties at the time the stipulation was dictated to the court reporter which indicated that it was not a completed agreement or that it was not to become effective until reduced to writing and approved and signed by the parties.

On the contrary, all the acts of the parties and everything that transpired at the time tends to establish the terms of the stipulation as an agreement entered into with the full consent and approval of both plaintiff and defendant; especially is this so in view of their hostile attitude towards each other. To all intents and purposes that stipulation was made in open court. The court was purposely kept open for the transaction of that very business; and until it was completed the judge of the court was actively engaged in its supervision. The record clearly establishes the contention of plaintiff that the decree from which defendant has attempted to appeal is a consent decree, from which no appeal can be taken.

It follows that our former decision herein was erroneous, and should be vacated and the opinion rendered in announcing the same recalled. It is so

ordered, and the decree of the Circuit Court is affirmed.    AFFIRMED ON REHEARING.    COSTS TAXED.

Mr. Justice COSHOW, having been appointed after this case was heard, took no part in the decision.

Mr. Justice BROWN concurs in the result.

